# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | | |
|---|---|---|
| **WILLIAM L. RESPESS, DEAN BARR, HUGH P. BRIEN, JOHN CAVEDO, TIMOTHY CORDLE, HARVEY CURLEE, DAVID GIBBINGS, RAINE GILBERT, STU HALAZ, DAVID HARBACH, KENNETH HERLINGER, TIM HOOPER JEFFERSON KASTER, RICK LUTHER, KEVIN MCCLUNG, JAMES MCCRARY, PETER K. MCCRARY,** by the Executor of his estate, **JOHN MCCRARY, PETER M. MCCRARY, DAVID MADDOX, ROBERT C. MORRIS, JR., TRACY PORTER, JOHN ROWE, CHRIS STATIS, MICHAEL STASO, RONALD M. STELMASCZYK, JOHN C. THARRINGTON, SALVATORE J. VITALE, JR.** and **GRAHAM UNDERCOFFER,** | § § § § § § § § § § § § § § § § § § | CLERKS OFFICE U.S. DIST. COURT AT LYNCHBURG, VA FILED  **6/6/2024**  LAURA A. AUSTIN, CLERK BY:  s/ CARMEN AMOS DEPUTY CLERK |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No.:  **6:24CV00028** |
| **VMI ALUMNI ASSOCIATION,** Serve:  David L. Prasnicki, Registered Agent         304 Letcher Avenue         Moody Hall         Lexington, Virginia 24450 | § § § § § § § | |
| Defendant. | § § | |

## **COMPLAINT**

COME NOW the plaintiffs, William L. Respess, Dean Barr, Hugh P. Brien, John Cavedo,

Timothy Cordle, Harvey Curlee, David Gibbings, Raine Gilbert, Stu Halaz, David Harbach, Kenneth

Herlinger, Tim Hooper, Jefferson Kaster, Rick Luther, Kevin McClung, James McCrary, Peter K.

McCrary, by the executor of his estate, John McCrary, Peter M. McCrary, David Maddox, Robert C.

Morris, Jr., Tracy Porter, John Rowe, Chris Statis, Michael Staso, Ronald M. Stelmasczyk, John C. Tharrington, Salvatore J. Vitale, Jr., and Graham Undercoffer (collectively "the Plaintiffs"), by counsel, and for their Complaint against the VMI Alumni Association ("VMIAA") state as follows:

## INTRODUCTION

1.      This Complaint asserts claims pursuant to 42 U.S.C. § 1983, as well as claims pursuant to Virginia's Nonstock Corporation Act to enjoin and set aside the *ultra vires* acts of the VMIAA and its Board of Directors, pursuant to Virginia Code § 13.1-828, and claims pursuant to Virginia's Civil Conspiracy statutes, Virginia Code §§ 18.2-499 and 18.2-500.  All claims made herein are equitable in nature and the plaintiffs seek only declaratory and injunctive relief.

2.      The VMIAA was organized in July of 1842 by graduates of the Virginia Military Institute ("VMI") as the "Alumni Military Association" and changed its name to the "Society of Alumni" in 1853 when the members adopted an updated constitution.  It is the oldest public college alumni association in the United States.  The original purpose of Alumni Association was "to preserve associations, friendships, and memories of cadet life".  This stated purpose continued through its incorporation in 1919, though slightly restated as "to organize the alumni and old cadets of the Virginia Military Institute in one general body, so as to better keep alive the memories of Institute life, and by their unified efforts the more efficiently to aid in the promotion of the welfare of the Institute, and the successful prosecution of its educational purposes in the future".  For most of the 182 years of the VMIAA's existence, the VMIAA, through its Board of Directors, has faithfully served its purpose and its members.  However, as the VMIAA and its affiliated fundraising corporation, the VMI Foundation, accumulated more and more funds from the charitable contributions of the successful alumni of VMI, and as VMI became more and more dependent upon

2

the VMIAA and the VMI Foundation, the separation between VMI and the VMIAA and the VMI Foundation slowly disappeared such that, as of the last several years, VMI and the VMIAA are indistinguishable and are wholly dependent upon one another for existence.  As a result, VMI and its administration now control the VMIAA, and the VMIAA operates solely for the benefit of VMI and not its members.  By reason of this relationship and status, the VMIAA's actions or omissions as to the plaintiffs constitute state action.  While pervasively entwined and engaged in a symbiotic relationship with VMI, the VMIAA has, over the last several years, unlawfully amended its Articles of Incorporation multiple times, without the statutorily required notice to its members and without input or approval from its members, amended its bylaws to directly conflict with its Articles of Incorporation and/or conducted its meetings of members and director elections in order to deliberately deprive the members of the VMIAA, including your plaintiffs, of their right to vote for and/or to remove the directors of the VMIAA, with whom they disagree and seek to redress their grievances, which are infringements of their rights guaranteed by the First Amendment to the United States Constitution as made applicable to the state by the Fourteenth Amendment to the United States Constitution and to unlawfully govern the VMIAA.  Additionally, the VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, the VMIAA has refused to recognize the right of the members of the VMIAA, including your plaintiffs, to remove the board of directors of the VMIAA "at any meeting", which right is expressly provided to members in the Articles of Incorporation, intentionally blocking the rights of the members at the April 9, 2022 annual meeting and then again at the June 11, 2022 special meeting, again directly infringing upon the plaintiffs' rights under the First Amendment to the United States Constitution.  Then, in January 2024, while pervasively entwined and engaged in a symbiotic relationship with VMI, the VMIAA

3

unlawfully enacted a policy to remove and otherwise discipline members of the VMIAA in its sole discretion, which is not authorized by the Articles of Incorporation, and has unlawfully utilized such policy to silence members of the VMIAA who question the management or direction of the VMIAA and/or VMI by suspending the members of the VMIAA, including some of the plaintiffs herein. Such actions and official policies and practices enacted by the VMIAA, through its board of directors and president, as described herein, who claimed final authority to take such actions or to enact such official policies and practices, while pervasively entwined and engaged in a symbiotic relationship with VMI, violated the plaintiffs' First Amendment rights to freedom of speech/expression and freedom of assembly and association and the plaintiffs' Fourteenth Amendment right of due process. Additionally, such actions by the VMIAA were *ultra vires* and are hereby challenged pursuant to Virginia Code § 13.1-828. The purpose of this suit is to have the unconstitutional and otherwise unlawful actions or omissions of the VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, a state agency, declared unconstitutional or otherwise unlawful, enjoined and/or set aside, and to restore lawful and rightful control over the VMIAA to its members pursuant to lawfully enacted articles of incorporation.

## JURISDICTION

3.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over 42 U.S.C. § 1983 claims. Further, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a) over the state law claims, including claims alleged pursuant to Virginia Code §§ 13.1-828, 18.2-499 and 18.2-500. All equitable relief available under these statutes is sought herein by plaintiffs. Declaratory relief is authorized by 28 U.S.C. § 2201 and 2202.

**VENUE**

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to plaintiffs' claims occurred in this district.

5.     Assignment to the Lynchburg Division of the Western District of Virginia is proper pursuant to Western District of Virginia Local Rules 2(a)(5) and 2(b) (b)(4) and 3(C) because a substantial part of the acts and omissions giving rise to plaintiffs' claims occurred in this division.

**PARTIES**

6.     Defendant, VMIAA, is a Virginia nonstock corporation, incorporated and existing under the laws of the Commonwealth of Virginia, specifically under the Virginia Nonstock Corporation Act, Va. Code Ann. § 13.1-801 *et seq.*  The principal office of the VMIAA is located in Lexington, Virginia, in the County of Rockbridge.   VMIAA is hereby sued directly for purposes of 42 U.S.C. § 1983 claims, pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), acting jointly in concert with the Virginia Military Institute ("VMI"), a state agency, with which, at all relevant times, the VMIAA was pervasively entwined and had a symbiotic relationship.

7.     Plaintiff, William L. Respess, is an alumnus of VMI, a graduate in the Class of 1961. Respess is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

8.     Plaintiff, Dean Barr, is an alumnus of VMI, a graduate in the Class of 1987.  Barr is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

9.     Plaintiff, Hugh P. Brien, is an alumnus of VMI, a graduate in the Class of 1988. Brien is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

10.     Plaintiff, John Cavedo, is an alumnus of VMI, a graduate in the Class of 1964.

5

Cavedo is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

11.     Plaintiff, Timothy Cordle, is an alumnus of VMI, a graduate in the Class of 1979. Cordle is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

12.     Plaintiff, Harvey Curlee, is an alumnus of VMI, a graduate in the Class of 1961. Curlee is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

13.     Plaintiff, David Gibbings, is an alumnus of VMI, a graduate in the Class of 1988. Gibbings is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

14.     Plaintiff, Raine Gilbert, is an alumnus of VMI, a graduate in the Class of 1961. Gilbert is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

15.     Plaintiff, Stu Halaz, is an alumnus of VMI, a graduate in the Class of 1987.  Halaz is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

16.     Plaintiff, David Harbach, is an alumnus of VMI, a graduate in the Class of 1961. Harbach is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

17.     Plaintiff, Kenneth Herlinger, is an alumnus of VMI, a graduate in the Class of 1985. Herlinger is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

18.     Plaintiff, Tim Hooper, is an alumnus of VMI, a graduate in the Class of 1988.

Hooper is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

19.     Plaintiff, Jefferson Kaster, is an alumnus of VMI, a graduate in the Class of 1990. Kaster is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

20.     Plaintiff, Rick Luther, is an alumnus of VMI, a graduate in the Class of 1988.  Luther is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

21.     Plaintiff, Kevin McClung, is an alumnus of VMI, a graduate in the Class of 1987. McClung is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

22.     Plaintiff, James McCrary, is an alumnus of VMI, a graduate in the Class of 1982. McCrary is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

23.     Plaintiff, Peter K. McCrary, by the duly appointed executor of his estate, John McCrary, is an alumnus of VMI, a graduate in the Class of 1956.  McCrary died on February 8, 2024 and was at all relevant times an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

24.     Plaintiff, Peter M. McCrary, is an alumnus of VMI, a graduate in the Class of 1988. McCrary is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

25.     Plaintiff, David Maddox, is an alumnus of VMI, a graduate in the Class of 1960. Maddox is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

26.     Plaintiff, Robert C. Morris, Jr., is an alumnus of VMI, a graduate in the Class of 1979.  Morris is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

27.     Plaintiff, Tracy Porter, is an alumnus of VMI, a graduate in the Class of 1987.  Porter is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

28.     Plaintiff, John Rowe, is an alumnus of VMI, a graduate in the Class of 1966.  Rowe is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

29.     Plaintiff, Chris Statis, is an alumnus of VMI, a graduate in the Class of 1987.  Statis is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

30.     Plaintiff, Michael Staso, is an alumnus of VMI, a graduate in the Class of 1979.  Staso is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

31.     Plaintiff, Ronald M. Stelmasczyk, is an alumnus of VMI, a graduate in the Class of 1974.  Stelmasczyk is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

32.     Plaintiff, John C. Tharrington, is an alumnus of VMI, a graduate in the Class of 1961.  Tharrington is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

33.     Plaintiff, Salvatore J. Vitale, Jr., is an alumnus of VMI, a graduate in the Class of 1961.  Vitale is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of Incorporation.

34.     Plaintiff, Graham Undercoffer, is an alumnus of VMI, a graduate in the Class of 1974.  Undercoffer is an "Active Member" of the VMIAA, as defined by the VMIAA's Articles of

Incorporation.

## FACTS COMMON TO ALL COUNTS

A.  **PERVASIVE ENTWINEMENT/SYMBIOTIC RELATIONSHIP BETWEEN VMI AND THE VMIAA**

35.  VMI is a public institution of higher education that was established by an act of the legislature of the Commonwealth of Virginia in 1839.  At all relevant times, VMI was an agency of the Commonwealth of Virginia and was pervasively entwined with and had a symbiotic relationship with the VMIAA.

36.  The VMIAA was organized in July of 1842 as the "Alumni Military Association" and changed its name to the "Society of Alumni" in 1853 when the members adopted an updated constitution.  It is the oldest public college alumni association in the United States.  The original purpose of Alumni Association was "to preserve associations, friendships, and memories of cadet life".

37.  The VMIAA was incorporated on December 13, 1919 under the Virginia Nonstock Corporation Act.  The stated purpose of the VMIAA was and remains today, "to organize alumni and old cadets of the Virginia Military Institute in one general body, so as the better to keep alive the memories of Institute life, and by their united efforts to more efficiently aid in the promotion of the welfare of the Institute, and the successful prosecution of its educational purposes in the future".

38.  The VMI Foundation, Inc. ("Foundation") was incorporated in 1937 under the Virginia Nonstock Corporation Act to act as an affiliated entity of the VMIAA to "accept gifts, grants, devises, bequests, transfers and other donations of money and property, real and personal, of all kinds to use, appropriate, devote, allocate, distribute, give or expend the same, or the income

therefrom, or both, for the advancement, promotion, encouragement, welfare and progress of the Virginia Military Institute and for the advancement, promotion, encouragement, welfare and progress of the VMI Alumni Association". At all relevant times, the Foundation has been and is pervasively entwined and had a symbiotic relationship with the VMIAA and VMI.

39. The pervasive entwinement or symbiotic relationship between VMI and the VMIAA and Foundation began in the late 1980s and it has only increased or strengthened over the last few decades until now VMI and the VMIAA and Foundation are virtually indistinguishable. The beginning of the pervasive entwinement or symbiotic relationship between VMI and the VMIAA and Foundation is illustrated in the case of United States of America v. Commonwealth of Virginia, et al., case number 90-0126-R, filed in this Court in the Roanoke Division, which case culminated the United States Supreme Court opinion in United States v. Virginia, 518 U.S. 515 (1996) and the admission of women to VMI. In the district court case number 90-0126-R, the Justice Department filed suit on behalf of the United States against VMI for violating the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment for discriminating against women in its admission policy. During the early stages of the case, the VMIAA and Foundation moved to intervene in the case pursuant to Rule 24(a)(2) and (b)(2) of the Federal Rules of Civil Procedure as defendants with VMI. The United States objected to their intervention, arguing that the VMIAA and Foundation had no actual interest in the case and were private entities. The VMIAA and Foundation contended that they were proper parties' defendant with interests entwined with VMI and that their Articles of Incorporation would require them to dissolve if VMI's mission fundamentally changed or VMI ceased to exist. The district court agreed and granted the motion of the VMIAA and Foundation to intervene as defendants in the case. Shortly thereafter, the Attorney General of

Virginia moved to withdraw its representation of VMI in the case, which motion was granted by the district court. At the same time, the VMIAA and Foundation requested that their lawyers be permitted to take over the representation of VMI, in place of the Commonwealth of Virginia. For the next six years, the VMIAA and Foundation were defendants in the case and represented the interests of VMI, the Superintendent, and the Board of Visitors of VMI, from the district court to the Fourth Circuit Court of Appeals, back to the district court, on a second appeal to the Fourth Circuit Court of Appeals, and ultimately to the United States Supreme Court.

40.    Between 1937 and 1990, a span of 53 years, the VMIAA and Foundation contributed approximately $25,554,300 to VMI – an average of approximately $482,000 per year. In more recent years, the VMIAA and Foundation contribute more than this amount to VMI, every year. On average, the VMIAA and Foundation contribute approximately $27,000,000.00 per year to VMI, which represents 38%-50% of VMI's operating yearly budget and is more than the amount contributed by the state. The latest yearly budget approved by the VMI Board of Visitors includes a contribution of $33,051,000.00 from the VMIAA and its Foundation. This yearly contribution makes VMI entirely dependent upon the VMIAA to operate and has led to the increasing control of the board of directors of the VMIAA by VMI. What began as an association of VMI graduates to remember life at VMI and to support fellow alumni has become a marketing and moneymaking machine for VMI, with no separation between the VMIAA and VMI. The increasing need to control the VMIAA by VMI has directly led to the deprivation of Constitutional rights of the members of the VMIAA, including your plaintiffs, by the VMIAA and VMI, acting jointly and in concert and while pervasively entwined and engaged in a symbiotic relationship.

41.    Since the 1990s the pervasive entwinement and symbiotic relationship between VMI

and the VMIAA has only increased and strengthened.  In 2019 the VMI alumni corporations were restructured and the VMIAA became part of the "VMI Alumni Agencies", which is a consolidating entity comprised of VMI's four alumni organizations: the VMI Alumni Association, VMI Foundation, Inc., VMI Development Board, Inc. and VMI Keydet Club, Inc.  Each of these four nonstock corporations restated their articles in 2019.  The VMI Development Board, Inc. was originally a corporation created to "support the Virginia Military Institute by coordinating development and fund-raising efforts conducted on behalf of the Institute…"  Its original board numbered six *ex officio* directors, two of whom were the Superintendent of VMI and the president of the VMI Board of Visitors.  After restatement, however, it was renamed the "VMI Alumni Agencies Board".  Its purposes were substantially broadened and included "(i) governance, oversight and coordination of the activities and operations of the VMI Alumni Agencies in carrying out their respective missions in support of VMI".  All of these organizations are pervasively entwined with each other and with VMI, except that now, instead of being four separate entities, the three Alumni Agencies fall under the umbrella of the VMI Development Board reconstituted as the VMI Alumni Agencies Board.  The net effect and practical purpose of the restructuring in 2019 was to give VMI and its administration virtually total control over the VMIAA and the entwined alumni agencies and, importantly, more control over the $700,000,000.00 endowment held by the alumni agencies.  Even though VMI had already essentially controlled the VMIAA and Foundation for decades, the restructuring of the alumni agencies introduced a reconstituted and repurposed corporate entity, the VMI Alumni Agencies, and a new position of Chief Executive Officer (CEO) to head the VMI Alumni Agencies, including the VMIAA, and provided direct control over the VMIAA to VMI and its superintendent.  In its essence, the 2019 restructuring was a corporate takeover of the VMIAA

and Foundation by VMI, a state agency.  The position of CEO for the VMI Alumni Agencies was advertised by VMI as a position with VMI and VMI and its administration was directly involved in choosing the individual who became the CEO.  This restructuring of the agencies was done without notice to and without the approval of the members of the VMIAA, as is required by Virginia Code § 13.1-886.  Importantly, Article 4.5 of the VMI Alumni Agencies bylaws expressly provides the VMI Alumni Agencies and its CEO, in combination with VMI and its superintendent, direct control over the governance of the VMIAA and the other constituent and entwined entities of the Alumni Agencies.  Article 4.5 of the VMI Alumni Agencies bylaws reads as follows:

> Chief Executive Officer.  The CEO shall be the chief executive officer of the Corporation on a full-time basis and will be responsible for its supervision and operation under the direction and control of the Chairman and the Board of Directors in accordance with the Articles of Incorporation and these Bylaws.  In addition, **the CEO shall (a) ensure proper communication with the Office of VMI's Superintendent to achieve, support, and follow VMI''s approved strategic plan** and coordinate for support of the Corporation's and the VMI Alumni Agencies' functions, meetings, and other scheduled activities impacting VMI resources as well as the personal involvement of VMI's Superintendent in support of these functions, meetings, and activities and **(b) manage the business affairs, functions, and operations of the VMI Alumni Agencies** under the oversight of the Board of Directors of each of the VMI Alumni Agencies **and serve as the chief liaison between each of the VMI Alumni Agencies and VMI**.  The CEO shall also serve as the Secretary of the Corporation.  For purposes of these Bylaws, the term "VMI Alumni Agencies" shall have the same meaning as set forth in the Articles of Incorporation.  (**emphasis added**).

42.     At all relevant times, the CEO of the VMI Alumni Agencies worked directly with VMI and its administration and provided VMI and its administration with more control over the VMI Alumni Agencies, including the VMIAA.  At all relevant times, virtually every action taken by the VMIAA has been directly controlled by the CEO of the VMI Alumni Agencies and VMI and its administration, including those actions complained of herein, while the VMIAA and VMI were

pervasively entwined and engaged in a symbiotic relationship.

43.     At all relevant times, the VMIAA occupied Moody Hall, Neikirk Hall and other state buildings located on the VMI post and belonging to VMI.

44.     At all relevant times, the VMIAA networking program for cadets is operated under the guidance of VMI Career Services Office.

45.     At all relevant times, cadets of VMI are used by the VMIAA using the VMIAA calling list to call alumni to solicit funds.  This includes funds that are solicited to pay the Superintendent's salary, bonuses, and for his large discretionary fund.

46.     At all relevant times, VMI forced all donations made by alumni to benefit cadets or the Institute to be made through the VMIAA, which must be approved by VMI, through the Superintendent.  On March 3, 2023 Superintendent Wins issued a memorandum in which he set forth VMI's policy, in pertinent part as follows:

> "VMI only recognizes the established VMI Alumni Agencies and VMI Research Lab as approved external funding sources".  "Any donation, monetary or in kind, from any organization other than the VMI Alumni Agencies to a VMI sponsored cadet activity must be approved, in advance, by the Superintendent or his designee." "…it is the policy of the Institute to recognize only those donations made to the VMI Alumni Agencies for purposes of official VMI functions, ceremonies, and publications."

47.     At all relevant times, the VMIAA directly participated in the evaluation and recommendation of candidates for administrative positions at VMI, including the Superintendent and Commandant.

48.     At all relevant times, VMI deliberately conspired with the VMIAA to force VMI's 125+ year-old independent student newspaper, *The Cadet*, one of the oldest independent college newspapers in Virginia, to become part of the VMIAA Communications' office and/or otherwise

14

under the direct control and/or influence of VMI while simultaneously violating the First Amendment rights of the VMIAA members, including some of your plaintiffs, who provided support to VMI cadets and their publication to remain independent and exercise their rights under the First Amendment to the United States Constitution. VMI attempted to use the memorandum issued on March 3, 2023 by Superintendent Wins to control the funds and sources of funds donated to *The Cadet* even after VMI received a formal warning letter from the Student Press Law Center and the Foundation for Individual Rights and Expression (FIRE) for their actions. After initially fully endorsing the initiative to restart *The Cadet* after the previous administration closed it in 2019, the VMIAA reversed course and disavowed the newspaper after it refused to become part of the VMIAA under the direct control of VMI.

49.   At all relevant times, VMI and its administration directly participated in the evaluation and recommendation of candidates for the board of directors of the VMIAA and the other alumni agencies, all of which are pervasively entwined and engaged in a symbiotic relationship with VMI.

50.   At all relevant times, the VMI Superintendent was on the board of directors of the VMI Alumni Agencies, Inc., the VMI Keydet Club, Inc., the VMI Foundation, Inc., and is a voting member of the VMIAA, all of which were pervasively entwined and engaged in a symbiotic relationship with VMI.

51.   At all relevant times, Hugh Fain, a member of the VMI Board of Visitors, was on the board of directors of the VMI Alumni Agencies, Inc., which was pervasively entwined and engaged in a symbiotic relationship with the VMIAA and VMI.

52.   At all relevant times, Thomas R. Watjen, a member of the VMI Board of Visitors,

was on the board of directors of the VMI Foundation, Inc., which was pervasively entwined and engaged in a symbiotic relationship with the VMIAA and VMI.

53.     At all relevant times, the VMIAA and Foundation have been the obligors on multimillion-dollar municipal bonds in the approximate amounts of $29,000,000.00 each for VMI, standing in place of VMI or the named municipality, putting its assets at risk in lieu of the assets of the state or named municipality, as part of the pervasive entwinement and symbiotic relationship between the VMI Alumni Agencies and VMI.

## B.     AMENDMENTS TO ARTICLES WITHOUT MEMBER INVOLVEMENT

54.     Pursuant to Virginia Code § 13.1-886, where there are members having voting rights, amendments to the articles of incorporation shall be adopted in the following manner:

> 1.     The proposed amendment shall be adopted by the board of directors;
>
> 2.     After adopting the proposed amendment, the board of directors shall submit the amendment to the members for their approval.  The board of directors shall also transmit to the members a recommendation that the members approve the amendment, unless the board of directors makes a determination that because of conflicts of interest or other special circumstances it should not make such a recommendation, in which case the board of directors shall transmit to the members the basis for that determination; and
>
> 3.     The members entitled to vote on the amendment shall approve the amendment as provided in subsection D.

Virginia Code § 13.1-886 also requires that the corporation notify the members of a meeting to vote for the amendment and that the amendment receive a two-thirds majority vote by the members entitled to vote.

55.     Pursuant to Virginia Code § 13.1-803 "voting power means the current power to vote in the election of directors".  All active members of the VMIAA, including your plaintiffs, possess

16

the right to vote to elect and remove directors, as expressly provided in the Articles of Incorporation.

56.     Notwithstanding the clear and unambiguous requirements set forth in Virginia Code §
13.1-886, and the fact that all of the active members of the VMIAA possess voting rights, as defined
by Virginia Code § 13.1-803, the VMIAA and its board of directors has intentionally and purposely
ignored the statutory requirements and has amended the Articles of Incorporation of the VMIAA to
infringe upon the members' right to vote without complying with the clear requirements of Virginia
Code Section § 13.1-886.

57.     The total restructuring of the VMI Alumni Agencies that provided more control to
VMI and its administration was done without complying with the requirements of Virginia Code §
13.1-886.  Additionally, the 2019 amendment to the Articles of Incorporation expressly removed the
right of the members, including your plaintiffs, to vote by proxy, directly infringing upon the
members' right to vote, which is an expression of speech, and, thus, violated the plaintiffs' rights
under the First Amendment to the United States Constitution, as it was done by the VMIAA and its
board of directors, while the VMIAA was pervasively entwined and engaged in a symbiotic
relationship with VMI, a state agency.

58.     The VMIAA board of directors reported to the Virginia State Corporation
Commission in the transmission letter under which the 2019 amendment was submitted for filing
that it had adopted the 2019 amendment to the articles by a two-thirds of the board vote and underline(falsely)
stated that the amendment did not require member approval because the members did not have
sufficient voting rights to require their approval.  Actually, the members have the right to vote for the
election of directors pursuant to Sections 5.2 and 6.2 of the 2019 Articles of Incorporation and
Article IV of the pre-2019 Articles of Incorporation.  Therefore, pursuant to Virginia Code Section §

17

13.1-886, the VMIAA board of directors were required to provide notice to the members of the VMIAA of the recommended amendments and to obtain their approval.

59.     To date, neither the VMIAA nor VMI has ever notified the active members of the VMIAA, including your plaintiffs, that it amended the Articles of Incorporation to remove the members' right to vote by proxy and/or to restructure the VMI Alumni Agencies to provide more control over the VMIAA to VMI and its superintendent.

## C.     MEDIA COVERAGE – CLAIMS OF STRUCTURAL RACISM, INVESTIGATION, AND FINDINGS OF LACK OF TRANSPARENCY BY THE VMIAA AND VMI

60.     In 2020 VMI found itself the subject of media coverage and a state-supported investigation surrounding claims of structural racism.  State officials ordered an outside investigation into VMI's culture, policies, practices, and equity in disciplinary procedures.

61.     One week after the investigation was opened, VMI's Superintendent, retired U.S. Army General J.H. Binford Peay, III, was forced to resign.

62.     An investigation was ordered by the state into the claims of structural racism at VMI and within the VMI community, including the VMIAA.

63.     Barnes & Thornburg, LLP conducted the investigation and made its findings in a report issued on or about June 1, 2021.   Many of the findings of the Barnes & Thornburg report involved a general lack of transparency by VMI and the VMIAA and highlighted the pervasive entwinement between VMI and the VMIAA and Foundation.  A few of these findings are as follows:

> "Cadets, alumni, and faculty repeatedly described the culture at VMI as one of silence, fear, and intimidation, especially as it relates to the reporting of problems or issues that reflect negatively on the Institute or its leadership."

> "[d]espite a pledge of cooperation, VMI's leadership sought to control the

18

investigation, the message, and the report's findings. VMI also sought to keep members of the VMI community, including current senior administrators, from participating in interviews, and it engaged in public messaging designed to encourage the VMI community to disbelieve and reject this report, particularly when their efforts to thwart the investigation proved unsuccessful. These actions by VMI negatively impacted the investigation, especially because, as VMI knew, there was no process to compel VMI's cooperation."

"VMI should collect and publish detailed financial information from the Alumni Agencies on how funds are raised and spent, including the source of the funds and any earmarks"

"[t]he Team's efforts to interview alumni of diverse opinions and experiences was significantly hampered by the fact that the Team never received a list of alumni. The Team requested this list from both VMI itself and from the VMI Alumni Agencies, the consolidated group that comprises VMI's alumni and fundraising entities. VMI did not provide this alumni information and referred the Team to the Alumni Agencies; the Alumni Agencies, in turn, declined the Team's request for its alumni list, citing privacy concerns."

"VMI and the Alumni Agencies fed that mistrust with inaccurate comments about the investigation that they issued to the press and to alumni."

"[a]lthough alumni funds make up more than half of VMI's annual budget, VMI did not produce the memoranda of understanding it has with the Alumni Agencies relating to funds from their component alumni associations. The Alumni Agencies, in turn, also declined to provide these memoranda of understanding, or any documents at all on their finances or expenditures."

"The requested documents would have provided significant insight into the processes by which funds are raised, donated, and distributed to VMI, as well as the institutional priorities of VMI and the Alumni Agencies and the extent to which diversity is included in those priorities."

"The 'VMI Alumni Agencies' is the consolidating entity that captures VMI's four alumni organizations: the VMI Alumni Association, VMI Foundation, Inc., VMI Development Board, Inc. and VMI Keydet Club, Inc."

"Although each of these component entities reports as a separate 501(c)(3) nonprofit corporation, they present their financial statements collectively because the corporations serve the common purpose of raising alumni funds and acting on behalf of alumni to support VMI."

"Given the critical role that the Alumni Agencies play in funding and dictating

19

VMI's priorities and, given the overwhelming resistance among the VMI alumni community to DEI progress initiatives and Confederate disassociation, this report recommends greater transparency in the Alumni Agencies' fundraising sources and funding decisions."

64.    The findings of Barnes & Thornburg regarding the general lack of transparency, failure to disclose financial information, particularly with respect to VMI's control over the finances of the VMIAA and Foundation, and lack of involvement by ALL alumni in the investigation to ensure viewpoint diversity, were very troubling to the active members of the VMIAA, including your plaintiffs.  Even more troubling, however, was the handling of the claims of structural racism by VMI and the VMIAA.  Many VMI alumni, including your plaintiffs, began investigating ways to redress their grievances with VMI and the VMIAA, both of which were actively silencing the opinions of the VMI alumni, including your plaintiffs.  During this time, some members of VMI alumni, including some of your plaintiffs, learned of the unlawful actions of the VMIAA and VMI to deprive the members of their right to vote and to voice their opinions regarding the direction of VMI and the VMIAA, including the restructuring of the alumni agencies and the amending of the articles of incorporation without member involvement or any notification to the members, including your plaintiffs.  Because of the failure of the VMIAA and VMI to notify the members, your plaintiffs sought to inform the other members of the unlawful and otherwise *ultra vires* actions or omissions of the VMIAA and VMI, acting jointly and in concert.  To that end, some of your plaintiffs requested to inspect and copy the record of members of the VMIAA to communicate with the other members, which requests were repeatedly and summarily refused by the VMIAA and VMI, acting jointly and in concert, while pervasively entwined and engaged in a symbiotic relationship.

**D.    REFUSAL TO PROVIDE THE RECORD OF MEMBERS BY THE VMIAA**

65.     Pursuant to Va. Code Ann. § 13.1-932(C), the VMIAA "shall maintain a record of its members, in a form that permits preparation of a list of the names and addresses of all members, in alphabetical order by class, if any".

66.     Included in the "record of members" that the VMIAA maintains, are the following: member's name, member's class, member's residential address, member's telephone number(s), member's e-mail address(es); member's occupation; member's employer's name, member's business address, among other information.  The VMIAA maintains the "record of members" in electronic form and routinely utilizes electronic transmission relative to such information.

67.     Pursuant to Va. Code Ann. § 13.1-933(C) a member of the VMIAA is entitled to inspect and copy "the record of members" maintained by the VMIAA, among other records, if:

- He has been a member of record for at least six months immediately preceding his demand;

- His demand is made in good faith and for a proper purpose;

- He describes with reasonable particularity his purpose and the records he desires to inspect; and

- The records are directly connected with his purpose.

68.     Pursuant to Va. Code Ann. § 13.1-933(D) "[t]he right of inspection granted by this section may not be abolished or limited by a corporation's articles of incorporation or bylaws".

69.     Pursuant to Va. Code Ann. § 13.1-934(B) "[t]he right to copy records under § 13.1-933 includes, if reasonable, the right to receive copies by xerographic or other means, including copies through an electronic transmission if available and so requested by the member".

70.     On multiple occasions active members of the VMIAA, including some of your plaintiffs, made requests to inspect and copy the record of members of the VMIAA but the VMIAA

21

and VMI, acting jointly and in concert, while pervasively entwined and engaged in a symbiotic relationship, summarily refused the requests, stating that the requirements of the statute did not apply to it. Ultimately the VMIAA was forced to provide the names and mailing addresses of the members, but the VMIAA continues to refuse to provide the email addresses of the members, which is the only reasonable means by which to communicate with the more than 20,000 members of the VMIAA, and which is the primary means by which the VMIAA and VMI communicate with the members.

71.     At all relevant times, the VMIAA has allowed and, in fact, facilitated the use of the "record of members" of the VMIAA, including email addresses, by VMI and its administration for the distribution of VMI messaging and communications.  However, at the same time the VMIAA has refused to provide the "record of members", including email addresses, in a form usable to its own members, including your plaintiffs.

**E.     APRIL 9, 2022 ANNUAL MEETING OF THE VMIAA**

72.     On April 9, 2022 the annual meeting of the VMIAA was held in Lexington, Virginia.

73.     The annual meeting was attended by approximately one hundred active members of the VMIAA, including many of your plaintiffs.  The annual members-only meeting was also attended by the Superintendent of VMI, who appeared in his Virginia Militia uniform accompanied by his Chief of Staff and other non-members of the VMIAA, including, but not limited to, a contingent of VMI campus police, including those in body armor in and outside of the building.  The plaintiffs attended the meeting for the specific purpose of redressing their grievances with VMI and the VMIAA and to remove the directors of the VMIAA who were controlled entirely by VMI.

74.     At the beginning of the annual meeting an active member of the VMIAA, Will Moore, made a motion pursuant to the express authority contained in Article 5.2 of the Articles of

Incorporation to remove the directors of the VMIAA.  Article 5.2 of the Articles of Incorporation reads as follows:

> **Voting Rights.**  Each Active Member and Honorary Member present at any meeting of the Corporation is entitled to one vote and shall have the right to vote to elect and remove Directors who are elected by the Members, but he or she shall not have the right to vote on any other matter nor to vote by proxy.

75.     The motion to remove directors was seconded by other active members of the VMIAA, including your plaintiffs.  The overwhelming majority of the active members present at the annual meeting voted to remove the directors of the VMIAA.  Not one member voted against the motion.

76.     Despite the clear and unambiguous right to remove directors at any meeting provided in the Articles of Incorporation, the President of the VMIAA, Sam Stocks, unlawfully claimed that the motion and vote were out of order and denied the active members of their right to vote to remove the directors.  This action by the VMIAA, which at all relevant times was pervasively entwined with VMI and engaged in a symbiotic relationship, deprived the members of the VMIAA, including your plaintiffs, of their freedom of speech guaranteed by the First Amendment to the United States Constitution.

77.      George H. Roberts ("Skip Roberts"), counsel for the VMIAA who was present at the April 9, 2022 meeting, claimed that Section 5.2 of the Bylaws provides that a special meeting is required to remove the existing board of directors.   When asked by multiple active members, including some of your plaintiffs, whether the express language of the Articles of Incorporation provided the right to members to remove directors at any meeting, Skip Roberts said "no".  This statement was untrue and known to be untrue by Skip Roberts, as the clear language of the Articles provides such a right and Skip Roberts' law firm, under his direct supervision, drafted the 2019

restated Articles.  Additionally, Skip Roberts, on behalf of the VMIAA, claimed that the "bylaws trump the articles" and that "bylaws are more powerful if they are in conflict", which, of course, is untrue and violates the express language of Virginia Code § 13.1-819 E, which reads in pertinent part that "whenever a provision of the articles of incorporation is inconsistent with a bylaw, the provision of the articles of incorporation shall be controlling."

78.     To further intentionally mislead the active members of the VMIAA present at the annual meeting on April 9, 2022, including your plaintiffs, Skip Roberts went on to claim that the members of the VMIAA had voted to amend the articles of incorporation, which he also knew to be untrue, as his law firm was responsible for the amendment and untruthfully represented to the Virginia State Corporation Commission in its filing of the amended articles that no member involvement was necessary.   Specifically, Skip Roberts represented to the active members of the VMIAA at the April 9, 2022 annual meeting that:

> "[i]n 2018 we went through the process where you amended your articles"
>
> "You have to give notice, of course."
>
> "The board had to approve and recommend to the members the amendment and restatement of the articles they presented."
>
> "But you had a role, the members voted on amending, we call it the charter, the articles".

These statements were made by Skip Roberts to intentionally mislead the members into believing that the Articles of Incorporation had been lawfully amended with notice to the members and membership endorsement, which he knew to be untrue.

79.     Both Skip Roberts and Sam Stocks claimed that a special meeting was required to remove the directors.  To placate the members, including your plaintiffs, who correctly insisted that

the directors had been lawfully removed and did not want to adjourn the meeting, Sam Stocks agreed

to call a special meeting so that, "if you think we're a bunch of idiots and you vote us out in a special

meeting, so be it, I've got better things to do, fellas."  When the active members present and eligible

to vote defeated Sam Stocks' attempts to adjourn the meeting after the false statements were made

by him and Skip Roberts, he unlawfully dismissed the active members' rights and disbanded the

meeting to thwart the active members stating – "[s]o we're going to adjourn this meeting, and all

may yell that I can't adjourn it because we didn't vote to do it".  Prior to that Sam Stocks and Skip

Roberts made numerous statements to deliberately give the members the understanding that a special

meeting would be called to provide the members, including your plaintiffs, with an opportunity to

remove the directors of the VMIAA.

## F.    JUNE 11, 2022 SPECIAL MEETING OF THE VMIAA

80.    A special meeting of the VMIAA was scheduled to be held on June 11, 2022 in

Lexington, Virginia.  However, notwithstanding the fact that Sam Stocks had represented at the

April 9, 2022 annual meeting that he would call a special meeting to allow the members to remove

the directors of the VMIAA, he did not allow any motions of any kind and only permitted the

members to vote to elect directors, as hand-picked by the nominating committee of the VMIAA.

This action by the VMIAA, which at all relevant times was pervasively entwined with VMI and

engaged in a symbiotic relationship, deprived the members of the VMIAA, including your plaintiffs,

of their freedom of speech guaranteed by the First Amendment to the United States Constitution.

When asked what the parliamentary procedure was for adjudicating issues at the meeting, *e.g.*

Robert's Rules of Order, etc., Sam Stocks replied that the rules to be followed are "my rules".  He

also responded to a request of one member at the meeting, who is a plaintiff herein, to produce the

list of members entitled to vote at the meeting required under Virginia Code § 13.1-845 C, referring the member to an attorney representing the Board of Directors at the meeting for satisfaction of his request.   The attorney responded to the request by stating that he did not have such a list. Accordingly no list of members was available at the meeting to permit determination if persons attending the meeting and voting were entitled to vote.

## G.   UNLAWFUL SUSPENSION OF MEMBERS

81.    On or about September 6, 2023 the VMIAA board of directors, acting jointly and in concert with VMI and its administration, sent letters to eight active members of the VMIAA, namely Michael Adriani, Timothy Cordle, Robert C. Morris, Jr., Peter K. McCrary, Peter M. McCrary, Tracy Porter, Michael Staso, and Ronald M. Stelmasczyk, seven of whom are your plaintiffs, notifying these active members that they had been suspended from the VMIAA for a period of ten years for seven of the members and permanently in the case of Robert C. Morris, Jr. (the "Suspended Members").

82.    The action by the VMIAA against plaintiff, Robert C. Morris, Jr., with his lifetime suspension, was clearly orchestrated by VMI.  The action was taken on the Saturday of a holiday weekend, approximately two days after VMI had been sanctioned by the Circuit Court of Rockbridge County for making false and misleading representations in a case filed by Morris' company, Center for Applied Innovation, LLC against VMI and its Board of Visitors for violations of Virginia Procurement Rules in competing and awarding a state contract and ordered to pay approximately $15,000 to Morris' company.

83.    All of these Suspended Members of the VMIAA who were ostensibly suspended by the VMIAA, acting jointly and in concert with VMI and its administration, had attended the April 9,

2022 meeting and/or the June 11, 2022 special meeting, and/or were all intent on: 1) redressing their grievances with the VMIAA and VMI; 2) removing the directors of the VMIAA through the lawful exercise of their right to vote to remove directors expressly provided in the Articles of Incorporation; and 3) notifying the other members of the VMIAA regarding the unlawful and *ultra vires* actions of the VMIAA board of directors.

84.    All members of the VMIAA have access to the "VMI Ranks", which is a database that contains the record of members of the VMIAA.  In its October 24, 2023 suspension reaffirmation letter, the VMIAA claimed that the Suspended Members were using their VMI Ranks accounts in a manner that violated the "VMI Ranks Agreement" but they were only trying to compile email addresses to communicate with other members, which was entirely lawful.

85.    In order to silence these active members of the VMIAA who wished to voice their opinions regarding the direction of VMI and the VMIAA through their votes to lawfully remove the directors of the VMIAA, the VMIAA, acting jointly and in concert with VMI, unlawfully suspended these members in violation of their rights under the First Amendment to the United States Constitution.  The VMIAA, acting jointly and in concert with VMI, unlawfully suspended the Suspended Members without due process guaranteed by the Fourteenth Amendment to the United States Constitution.

86.    Virginia Code § 13.1-819 A.3 provides that:

> "[i]f the corporation is to have one or more classes of members, any provision which the incorporators elect to set forth in the articles of incorporation or, if the articles so provide, in the bylaws designating the class or classes of members, stating the qualifications and rights of the members of each class or classes of members of each class and conferring, limiting or denying the right to vote."

87.    Article V of the Articles of Incorporation sets forth the classes of members and

defines their voting rights.  Article 5.1 reads as follows:

> **Members**.  The corporation shall have two class of Members, Active Members (**"Active Members"**) and Honorary Members (**"Honorary Members"**) (collectively, the **"Members"**).
>
> (a)  **Active Members.**  Each graduate of VMI is entitled to become an Active Member on the date of his or her graduation.  Each matriculant of VMI who was in good standing on the date of his or her departure therefrom is entitled to become an Active Member on the date of graduation of his or her Brother Rat Case; provided, however, in on event will an individual become an Active Member while still a member of the Corps of Cadets.  The Active Members shall be those members who are registered on the records of the Corporation.
>
> (b)  **Honorary Members.**  Any person deemed by the Board of Directors, in its discretion, to be worthy of such a distinction, either by virtue of special contributions to VMI or for other reasons, and who shall be elected to such position by the Board of Directors, shall be recognized as an Honorary Alumnus or Alumna of VMI and will be an Honorary Member of the Corporation with voting privileges.

Article 5.2. reads as follows:

> **Voting Rights.**  Each Active Member and Honorary Member present at any meeting of the Corporation is entitled to one vote and shall have the right to elect and remove Directors who are elected by the Members, but he or she shall not have the right to vote on any other matter nor to vote by proxy.

Article V of the Articles of Incorporation sets forth the classes of members and defines their voting rights.  Nothing in the Articles of Incorporation provides that the bylaws can set forth the qualifications and rights of the members of each class or classes of members of each class or can confer, limit or deny the right to vote.

88.    Article 5.3 of the Articles of Incorporation reads:

> **Reference to Bylaws.**  All **other** matters concerning the Members shall be set forth in the Bylaws of the Corporation.

To make it perfectly clear that only the Articles can set forth the qualifications and rights of the members of each class and their right to vote, Article 3.1 of the Bylaws reads:

28

> **Membership.**  The members of the Corporation (the "Members") and their voting rights shall be set forth in the Articles of Incorporation.

89.     Notwithstanding the clear language of Virginia Code § 13.1-819 A.3 and the clear language in the Articles of Incorporation, defining the membership of the VMIAA and their voting rights, the VMIAA Board of Directors, without notice of the members of the VMIAA and without member involvement of any kind, amended the Bylaws in 2019 to include the following in Article 3.11:

> **Suspension or Expulsion.**  A Member may be suspended or expelled from the Corporation for conduct deemed by the Board of Directors to be detrimental to the interests of the Corporation.  Such accused Member shall be furnished with a written statement of the cause of such suspension or expulsion and shall be given a reasonable opportunity to present his or her appeal of such suspension or expulsion to the Board of Directors.  At its discretion, the Board of Directors may reduce a period of suspension or reinstate an expelled Member.

The inclusion of this article in the Bylaws violates Virginia Code § 13.1-819 A.3, the clear language in the Articles of Incorporation, and the First and Fourteenth Amendments to the United States Constitution.

90.     In addition to violating Virginia Code § 13.1-819 A.3 and the First and Fourteenth Amendments to the United States Constitution, the inclusion of this language obviously conflicts with the clear language of the Articles of Incorporation and, thus, the inclusion of this language violates Virginia Code § 13.1-819 E, which reads in pertinent part as follows:

> …whenever a provision of the articles of incorporation is inconsistent with a bylaw, the provision of the articles of incorporation shall be controlling.

91.     After the VMIAA had unlawfully suspended the Suspended Members in September,

2023, the VMIAA Board of Directors hastily and, *ex post facto*, enacted the "VMIAA – Procedure for Disciplinary Appeal Hearing", that lacks every element of the procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution.

92.    If the VMIAA was truly interested in acting for the benefit of the VMIAA and its members and had any interest in protecting the constitutional rights of its members, it would have suspended or expelled members who truly detrimentally affect the VMIAA and not just members who wish to exercise their right of free speech, their right to vote and their right to free assembly, while expecting due process,  If the VMIAA was truly interested in acting for the benefit of the VMIAA and its members, the VMIAA would have suspended members who committed the following actual crimes, among several others:

- Murder

- Attempted Murder

- Assault and Battery

- Sexual Battery

- Armed Bank Robbery

- Armed Restaurant Robbery

- Double Murder

- Manslaughter

- Burglary with intent to commit rape

- Child Pornography

- Stolen Valor and stolen $1.7M

- Forgery, obtaining drugs by fraud, embezzlement

30

- Wire Fraud, Conspiracy to Commit Wire Fraud

- Treason against the United States by defection to a communist country

93. In addition to not suspending members whose actions were truly detrimental to the VMIAA, the VMIAA has never suspended any members who accessed the record of members of the VMIAA as contained in VMI Ranks. Also, the VMIAA, in joint action and concert with VMI, routinely provided the email addresses (and other information) of its members to those who could provide personal, financial, or political gain to VMI or members of its administration, or to the VMIAA and members of its board of directors. The sole reason the VMIAA board of directors, acting jointly and in concert with VMI, suspended the Suspended Members, was to silence these members who sought to redress their grievances with VMI and the VMIAA and who sought to communicate with other members to inform them of the unlawful actions of the VMIAA that deprived the members of their right to vote and to otherwise participate in directing the VMIAA. In so doing, the VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, violated the Suspended Members' rights under the First and Fourteenth Amendments to the United States Constitution and, by extension, the First and Fourteenth Amendment rights of the other active members of the VMIAA, including your remaining plaintiffs.

94. In January 2024, as part of the hastily and *ex post facto* enacted "VMIAA – Procedure for Disciplinary Appeal Hearing", the VMIAA board of directors enacted the "Statement of the Rights, Privileges and Disciplinary Policies and Loss of Privileges of the Members of the VMI Alumni Association". As with the "Procedure for Disciplinary Appeal Hearing", the "Statement of the Rights, Privileges and Disciplinary Policies and Loss of Privileges of the Members of the VMI Alumni Association", was enacted without any authority granted by the Articles of Incorporation or

the Virginia Nonstock Corporation Act. Additionally, the "Statement" directly conflicts with Articles 5.2. and 6.2 of the Articles of Incorporation and, thus, pursuant to the Virginia Code § 13.1-819 E, the "Statement" is void.

95.     In the "Statement of the Rights, Privileges and Disciplinary Policies and Loss of Privileges of the Members of the VMI Alumni Association", the VMIAA claims to have to authority to do the following to its members:

1.     A Member's suspension or expulsion shall become effective immediately upon the Board's decision.

2.     When the expulsion or suspension becomes effective, then the following shall occur:

a.     The Member's class agent shall be notified, and the Member shall be removed from the class's list of active Members in good standing.

b.     The Member shall not be permitted to participate in any Association, VMI Foundation, or Keydet Club (collectively the "Alumni Agencies") sponsored or on-post, including Association sponsored class functions.

c.     The Member shall be removed from the rolls of the Association in good standing and shall not be permitted to attend any meetings of the Members to vote for the election or removal of directors.

d.     Except as provided above, the Member shall be denied access to Moody Hall (including balconies and porch areas), any other facility on Post at the Institute controlled by the Association, and any Association, VMI Foundation, or VMI Keydet Club sponsored events on or off post, as well as all class sponsored events on or off post, as well as all class functions on-post.

e.     The Member shall be denied access to VMI Ranks and other Alumni Agencies' information technology systems (mobile app or other future systems).

f.     The Member shall no longer receive the Alumni Review and communications from the Association, the VMI Foundation, the VMI Keydet Club or the Institute through the Alumni Association's communication systems.

g.     The Member shall be denied communication through the Association of any class communication by the class agent.

h.     The Member shall be denied any other privilege afforded to Members at the time of such discipline and any additional privileges

provided to Members in the future.

Aside from lacking the authority to enact such a "Statement", the "Statement" lacks every element of the procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution and clearly violates the Suspended Members' First Amendment Rights of Free Speech and Free Assembly.  Additionally, the VMIAA's unlawfully enacted "Statement" includes discipline that extends to additional entities including the VMI Foundation, the VMI Keydet Club and the Institute (VMI) and prohibits the Suspended Members from coming upon state property.  While this unlawfully enacted "Statement" clearly violates the Suspended Members' First and Fourteenth Amendment rights, it is also another clear example of the pervasive entwinement and symbiotic relationship between the VMIAA, the VMI Foundation, the VMI Keydet Club and VMI, a state agency.

**H.   FALSE PUBLICATION AND CIVIL CONSPIRACY – VIRGINIA CODE §§ 18.2-209, 18.2-499, AND 18.2-500**

96.     In addition to suspending the Suspended Members in violation of their First and Fourteenth Amendment Rights, the VMIAA acting jointly and in concert with VMI, while pervasively entwined and engaged in a symbiotic relationship in or about January 2024 through March 2024 and after made false and misleading statements to the media, members of the VMIAA, and the public at large, to willfully and maliciously injure the Suspended Members in their reputations, trade, business and and/or profession.

97.     Virginia Code § 18.2-209 reads as follows:

> Any person who knowingly and willfully states, delivers or transmits by any means whatever to any publisher, or employee of a publisher, of any newspaper, magazine, or other publication or to any owner, or employee of

an owner, of any radio station, television station, news service or cable service, any false and untrue statement, knowing the same to be false or untrue, concerning any person or corporation, with intent that the same shall be published, broadcast or otherwise disseminated, shall be guilty of a Class 3 misdemeanor.

98.     At all relevant times, the VMIAA, acting jointly and in concert with VMI, made false and misleading statements about the Suspended Members and other of your plaintiffs in multiple publications and official statements to members of the VMIAA, parents of cadets, cadets, and to the public at large.  This culminated in or about January 2024 through March 2024 and after, with the VMIAA, acting jointly and in concert with VMI, making false and misleading statements about the Suspended Members to other members, the VMI Board of Visitors, and/or the media including, but not limited to, in an article entitled "VMI boots alums for stealing  alums' info", which the VMIAA and VMI distributed to members of the VMIAA and others, claiming, among other things that the Suspended Members had:

> "participated in the scraping or harvesting and subsequent use of over 6,000 VMI alumni's private contact profiles in violation of the VMIAA bylaws and policies"

and that the one of the Suspended Members had:

> "sued the VMIAA to turn over the private emails of VMI alumni"

These statements are simply false and were known by the VMIAA to be false when the statements were published.  At no time did any of the Suspended Members scrape, harvest or use over 6,000 VMI alumni's private contact profiles in violation of the VMIAA bylaws and policies.  First of all, the information in the VMI Ranks is not private, as it is accessible by all members of the VMIAA, and the information is published by the VMIAA in the "Register of Former Cadets of VMI" which the VMIAA and VMI made available to the public.  "The Register of Former Cadets of VMI" can be

found in libraries and bookstores across the country and online. Second, there was no bylaw nor written policy of the VMIAA that was violated by any of the Suspended Members that was in effect at any time in which it was alleged that the Suspended Members accessed information in the VMI Ranks. The Suspended Members, by counsel, have repeatedly requested any such bylaw or policy of the VMIAA and the VMIAA has failed and/or refused to provide any such bylaw or policy – as none exists. Further, none of the Suspended Members nor any other of your plaintiffs, have ever sued the VMIAA to "turn over the private emails of VMI alumni". And, the Suspended Members, on January 12, 2024 proposed to the VMIAA "that the parties engage a neutral retired judge from the McCammon Group to serve as the final arbiter of this dispute" to ensure the proceedings involving the Suspended Members were "conducted according to a fair procedure", as required by Virginia law. The VMIAA refused.

99.     Virginia Code § 18.2-499 reads as follows:

> A. Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor.

> B. Any person who attempts to procure the participation, cooperation, agreement or other assistance of any one or more persons to enter into any combination, association, agreement, mutual understanding or concert prohibited in subsection A of this section shall be guilty of a violation of this section and subject to the same penalties set out in subsection A.

100.     Virginia Code § 18.2-500 reads as follows:

> A. Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit,

including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include loss of profits.

B. Whenever a person shall duly file a civil action in the circuit court of any county or city against any person alleging violations of the provisions of § 18.2-499 and praying that such party defendant be restrained and enjoined from continuing the acts complained of, such court shall have jurisdiction to hear and determine the issues involved, to issue injunctions pendente lite and permanent injunctions and to decree damages and costs of suit, including reasonable counsel fees to complainants' and defendants' counsel.

101.     In or about January 2024 through March 2024 and after, the VMIAA acting jointly and in concert with VMI, while pervasively entwined and engaged in a symbiotic relationship, made false and misleading statements about the Suspended Members to the media in an article entitled "VMI boots alums for stealing  alums' info", to members of the VMIAA, and to the public at large, including that the Suspended Members had:

> "participated in the scraping or harvesting and subsequent use of over 6,000 VMI alumni's private contact profiles in violation of the VMIAA bylaws and policies"

and that the one of the Suspended Members had:

> "sued the VMIAA to turn over the private emails of VMI alumni"

These statements are simply false and were known by the VMIAA to be false when the statements were published.  VMI and the VMIAA combined, associated, agreed, mutually undertook and/or concerted together to willfully and maliciously injure the Suspended Members in their reputations, trades, businesses and/or professions.  The overarching purpose of the VMIAA's and VMI's willful and malicious injuring of the Suspended Members' reputations, etc., was to silence the Suspended Members and any other active member who dare speak out against the direction of VMI or the VMIAA or who dare attempt to notify other active members of the VMIAA of the unlawful

activities of the VMIAA.  Such actions violated the Suspended Members' rights under the First and Fourteenth Amendments to the United States Constitution and, by extension, the First and Fourteenth Amendment rights of the other active members of the VMIAA, including your remaining plaintiffs.  Pursuant to Virginia Code § 18.2-500 B, your plaintiffs seek to enjoin the VMIAA from continuing these unconstitutional and otherwise unlawful acts.

## I.    ULTRA VIRES ACTIONS OF THE VMIAA

102.    The VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, has amended the Articles of Incorporation without member notice or involvement multiple times since 1980, the latest amendment resulting in the restructuring of the VMI Alumni Agencies in 2019 and the additional loss of control of the VMIAA by its members.  In addition to the constitutional infringements, these actions violate Virginia Code § 13.1-828 as they were *ultra vires*.

103.    The VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, has conducted elections that violate the terms of the Articles of Incorporation and the Virginia Nonstock Corporation Act, including the election in June 2022 and the elections in April and/or May of 2023 and 2024.  In addition to the constitutional infringements, these actions violate Virginia Code § 13.1-828 as they were *ultra vires*.

104.    The VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, refused to recognize the lawful vote of its members at the annual meeting on April 9, 2022 to remove the directors of the VMIAA and to recognize the lawful vote of its members for replacement directors chosen by the members.  In addition to the constitutional infringements, these actions violate Virginia Code § 13.1-828 as they were *ultra vires*.

105.    The VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, refused to recognize the rights of its members at the special meeting on June 11, 2022 to remove the directors of the VMIAA and to recognize the lawful vote of its members for replacement directors chosen by the members.  In addition to the constitutional infringements, these actions violate Virginia Code § 13.1-828 as they were *ultra vires*.

106.    The 2019 Articles of Incorporation of the VMIAA do not contain a provision fixing the term of office for its directors.  Virginia Code § 13.1-857A reads as follows:

> In the absence of a provision in the articles of incorporation fixing a term of office, the term of office for a director shall be one year.

Virginia Code § 13.1-858 A provides that:

> The articles of incorporation may provide for staggering the terms of directors by dividing the total number of directors into groups…

Although the statute permits provision for staggered terms in the articles, it does not require them. Accordingly in the absence of a requirement for staggered in the articles, the bylaws cannot require them.  More fundamentally, Virginia Code § 13.1-855 D provides that:

> Directors shall be elected or appointed in a manner provided in the articles of incorporation.

The Articles do not permit the election of directors by electronic means as was done for the 2024 annual meeting of members.  Furthermore, the electronic voting system imposed by the board only permitted members to vote for directors who had been vetted by its "Nominating Committee".  No means were provided for members electing to vote using electronic means to vote for candidates of their own choosing or chosen by the members.  The bylaws, however, do not grant that power to the "Nominating Committee", as it can only "recommend candidates", and any such provision granting such power in the bylaws would conflict with the Articles and be invalid.  The VMIAA, while

pervasively entwined and engaged in a symbiotic relationship with VMI, has caused its directors to be elected to three-year terms with staggered expiration, which violates Virginia Code §§ 13.1-857A and 13.1-858 A.  Also, the manner of election of directors by electronic voting is not provided in the Articles of Incorporation and, thus, such an election by electronic voting violated Virginia Code § 13.1-855 D.  In addition to the constitutional infringements, these actions violate Virginia Code § 13.1-828 as they were plainly *ultra vires*.

## <u>COUNT ONE – DEPRIVATION OF CIVIL RIGHTS –42 U.S.C. § 1983</u>

### (Violation of First Amendment Freedom of Speech, Expression, Assembly and Fourteenth Amendment Due Process)

107.    Plaintiffs restate and incorporate herein the allegations set forth in paragraphs 1 through 106 of the Complaint.

108.    At all times relevant to the allegations in this Complaint, Defendant, VMIAA, acted jointly and in concert with VMI, a state agency, and was, at all relevant times to the allegations in this Complaint, pervasively entwined and engaged in a symbiotic relationship with VMI, a state agency, acting the color of law.  42 U.S.C. § 1983 provides that:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

109.    The First Amendment to the United States Constitution provides the right to free speech, the right to free expression, the right to petition the government for a redress of grievances,

the right to free assembly, and the right to vote, among other rights.

110.   As described in the Complaint, Defendant, VMIAA, acted jointly and in concert with VMI, a state agency, and was, at all relevant times to the allegations in this Complaint, pervasively entwined and engaged in a symbiotic relationship with VMI, a state agency, acting the color of law, and violated the plaintiffs' First Amendment right to free speech, right to free expression, right to petition the government for a redress of grievances, right to free assembly, and right to vote, among other rights.

111.   The Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property, without due process of law".

112.   As described in the Complaint, VMIAA, acted jointly and in concert with VMI, a state agency, and was, at all relevant times to the allegations in this Complaint, pervasively entwined and engaged in a symbiotic relationship with VMI, a state agency, acting the color of law violated the plaintiffs' Fourteenth Amendment rights to due process in depriving the plaintiffs of their liberty right to free speech, free assembly, a redress of their grievances, and their right to vote, as guaranteed by the First Amendment to the United States Constitution, without due process of law.

113.   The VMIAA's actions or omissions, as described herein, constitute a willful, wanton, reckless, deliberate indifference, and conscious disregard of the plaintiffs' constitutional rights, as described herein.

## COUNT TWO – DEPRIVATION OF CIVIL RIGHTS –42 U.S.C. § 1983

### (Violation of First Amendment Freedom of Speech, Expression, Assembly and Fourteenth Amendment Due Process – Suspended Members Only)

114.   Plaintiffs restate and incorporate herein the allegations set forth in paragraphs 1 through 113 of the Complaint.

115.    At all times relevant to the allegations in this Complaint, Defendant, VMIAA, acted jointly and in concert with VMI, a state agency, and was, at all relevant times to the allegations in this Complaint, pervasively entwined and engaged in a symbiotic relationship with VMI, a state agency, acting the color of law.  42 U.S.C. § 1983 provides that:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

116.    The First Amendment to the United States Constitution provides the right to free speech, the right to free expression, the right to petition the government for a redress of grievances, the right to free assembly, and the right to vote, among other rights.

117.    As described in the Complaint, Defendant, VMIAA, acted jointly and in concert with VMI, a state agency, and was, at all relevant times to the allegations in this Complaint, pervasively entwined and engaged in a symbiotic relationship with VMI, a state agency, acting the color of law, and violated the Suspended Members' First Amendment right to free speech, right to free expression, right to petition the government for a redress of grievances, right to free assembly, and right to vote, among other rights.

118.    The Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property, without due process of law".

119.    As described in the Complaint, VMIAA, acted jointly and in concert with VMI, a

state agency, and was, at all relevant times to the allegations in this Complaint, pervasively entwined

and engaged in a symbiotic relationship with VMI, a state agency, acting the color of law, and

violated the Suspended Members' Fourteenth Amendment rights to due process in depriving the

Suspended Members of their liberty right to free speech, free assembly, a redress of their grievances,

and their right to vote, as guaranteed by the First Amendment to the United States Constitution,

without due process of law.

120.    The VMIAA's actions or omissions, as described herein, constitute a willful, wanton,

reckless, deliberate indifference, and conscious disregard of the Suspended Members' constitutional

rights, as described herein.

## <u>COUNT THREE – CIVIL CONSPIRACY – VIRGINIA CODE §§18.2-499 AND 18.2-500</u>

121.    Plaintiffs restate and incorporate herein the allegations set forth in paragraphs 1

through 120 of the Complaint.

122.    Virginia Code § 18.2-499 provides as follows:

>    A. Any two or more persons who combine, associate, agree, mutually
>    undertake or concert together for the purpose of (i) willfully and
>    maliciously injuring another in his reputation, trade, business or profession
>    by any means whatever or (ii) willfully and maliciously compelling
>    another to do or perform any act against his will, or preventing or
>    hindering another from doing or performing any lawful act, shall be jointly
>    and severally guilty of a Class 1 misdemeanor.
>
>    B. Any person who attempts to procure the participation, cooperation,
>    agreement or other assistance of any one or more persons to enter into any
>    combination, association, agreement, mutual understanding or concert
>    prohibited in subsection A of this section shall be guilty of a violation of
>    this section and subject to the same penalties set out in subsection A.

123.    Virginia Code § 18.2-500 provides as follows:

>    A. Any person who shall be injured in his reputation, trade, business or

42

profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include loss of profits.

B. Whenever a person shall duly file a civil action in the circuit court of any county or city against any person alleging violations of the provisions of § 18.2-499 and praying that such party defendant be restrained and enjoined from continuing the acts complained of, such court shall have jurisdiction to hear and determine the issues involved, to issue injunctions pendente lite and permanent injunctions and to decree damages and costs of suit, including reasonable counsel fees to complainants' and defendants' counsel.

124.    As described in the Complaint, in or about January 2024 through March 2024 and after, the VMIAA acting jointly and in concert with VMI, while pervasively entwined and engaged in a symbiotic relationship, made false and misleading statements about the Suspended Members to the media, including but not limited to, in an article entitled "VMI boots alums for stealing  alums' info", to members of the VMIAA, and to the public at large, including that the Suspended Members had:

> "participated in the scraping or harvesting and subsequent use of over 6,000 VMI alumni's private contact profiles in violation of the VMIAA bylaws and policies"

and that the one of the Suspended Members had:

> "sued the VMIAA to turn over the private emails of VMI alumni"

These statements are simply false and were known by the VMIAA to be false when the statements were published.  At other times during this period the VMIAA, acting jointly and in concert with VMI, made false and misleading statements about the Suspended Members and other of your plaintiffs in multiple publications and/or official statements to members of the VMIAA, parents of cadets, cadets, and the public at large.  VMI and the VMIAA combined, associated, agreed, mutually

undertook and/or concerted together to willfully and maliciously injure the Suspended Members in their reputations, trades, businesses and/or professions in violation of Virginia Code § 18.2-499.  The overarching purpose of the VMIAA's and VMI's willful and malicious injuring of the Suspended Members' reputations, etc., was to silence the Suspended Members and any other active member who dare speak out against the direction of VMI or the VMIAA or who dare attempt to notify other active members of the VMIAA of the unlawful activities of the VMIAA.  Such actions violated the Suspended Members' rights under the First and Fourteenth Amendments to the United States Constitution and, by extension, the First and Fourteenth Amendment rights of the other active members of the VMIAA, including your remaining plaintiffs.  Pursuant to Virginia Code § 18.2-500 B, your plaintiffs seek to enjoin the VMIAA from continuing these unconstitutional and otherwise unlawful acts.

## COUNT FOUR – *ULTRA VIRES* ACTIONS OF VMIAA – VIRGINIA CODE §13.1-828

125.    Plaintiffs restate and incorporate herein the allegations set forth in paragraphs 1 through 124 of the Complaint.

126.    Virginia Code § 13.1-828 B 1 provides that "[a] corporation's power to act may be challenged: [i]n a proceeding by a member or a director against the corporation to enjoin the act".

127.    Virginia Code § 13.1-828 C provides in pertinent part that: "[i]n a proceeding by a member or a director under subsection B 1 to enjoin an unauthorized corporate act, the court may enjoin or set aside the act…"

128.    The VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, has amended the Articles of Incorporation without member notice or involvement multiple times since 1980, the latest amendment resulting in the restructuring of the VMI Alumni

Agencies in 2019 and the additional loss of control of the VMIAA by its members.  In addition to the constitutional infringements, these actions violate Virginia Code § 13.1-828 as they were *ultra vires*.

129.     The VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, has conducted elections that violate the terms of the Articles of Incorporation and the Virginia Nonstock Corporation Act, including the election in June 2022 and the elections in April and/or May of 2023 and 2024.  In addition to the constitutional infringements, these actions violate Virginia Code § 13.1-828 as they were *ultra vires*.

130.     The VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, refused to recognize the lawful vote of its members at the annual meeting on April 9, 2022 to remove the directors of the VMIAA and to recognize the lawful vote of its members for replacement directors chosen by the members.  In addition to the constitutional infringements, these actions violate Virginia Code § 13.1-828 as they were *ultra vires*.

131.     The VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, refused to recognize the rights of its members at the special meeting on June 11, 2022 to remove the directors of the VMIAA and to recognize the lawful vote of its members for replacement directors chosen by the members.  In addition to the constitutional infringements, these actions violate Virginia Code § 13.1-828 as they were *ultra vires*.

132.     The 2019 Articles of Incorporation of the VMIAA do not contain a provision fixing the term of office for its directors.  Virginia Code § 13.1-857A reads as follows:

> In the absence of a provision in the articles of incorporation fixing a term of office, the term of office for a director shall be one year.

The VMIAA, while pervasively entwined and engaged in a symbiotic relationship with VMI, has

caused its directors to be elected to three-year terms, which violates Virginia Code § 13.1-857A.  In addition to the constitutional infringements, these actions violate Virginia Code § 13.1-828 as they were *ultra vires*.

133.    Pursuant to Virginia Code § 13.1-855 D, directors are to be elected or appointed in a manner provided in the articles of incorporation.  The manner in which the VMIAA elected or appointed directors violated Virginia Code § 13.1-855 D.  In addition to the constitutional infringements, the manner in which the VMIAA elected or appointed directors violated Virginia Code § 13.1-828 as it is *ultra vires.*

134.    The Articles of Incorporation of the VMIAA, albeit unlawfully enacted, do not restrict members to voting only for candidates vetted by a "Nominating Committee".  The VMIAA's requirement that members of the VMIAA only be permitted to vote for handpicked candidates of the "Nominating Committee" violated Virginia Code § 13.1-855 D.  In addition to the constitutional infringements, the VMIAA's requirement that members of the VMIAA only be permitted to vote for handpicked candidates of the "Nominating Committee" violated Virginia Code § 13.1-828 as it is *ultra vires.*

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendant, VMI Alumni Association, and requests that this Court:

1.    Declare that the VMI Alumni Association and the Virginia Military Institute were pervasively entwined and engaged in a symbiotic relationship at all times relevant to the allegations set forth in this Complaint;

2.    Declare that the VMI Alumni Association violated the plaintiffs' rights guaranteed by the First Amendment to the United States Constitution;

3.      Declare that the VMI Alumni Association violated the plaintiffs' rights guaranteed by the Fourteenth Amendment to the United States Constitution;

4.      Declare that the VMI Alumni Association violated the First Amendment rights of the "Suspended Members", namely, Michael Adriani, Timothy Cordle, Robert C. Morris, Jr., Peter K. McCrary, Peter M. McCrary, Tracy Porter, Michael Staso, and Ronald M. Stelmasczyk;

5.      Declare that the VMI Alumni Association violated the Fourteenth Amendment rights of the "Suspended Members", namely, Michael Adriani, Timothy Cordle, Robert C. Morris, Jr., Peter K. McCrary, Peter M. McCrary, Tracy Porter, Michael Staso, and Ronald M. Stelmasczyk;

6.      Declare that the active members of the VMI Alumni Association present at any meeting have the right to vote to elect and remove Directors who are elected by the Members;

7.      Declare that the VMI Alumni Association violated the plaintiffs' rights guaranteed by the First and/or Fourteenth Amendments to the United States Constitution by refusing to recognize the plaintiffs' right to vote to elect and remove Directors at the April 9, 2022 annual meeting;

8.      Declare that the VMI Alumni Association violated the plaintiffs' rights guaranteed by the First and/or Fourteenth Amendments to the United States Constitution by refusing to recognize the plaintiffs' right to vote to elect and remove Directors at the June 11, 2022 special meeting;

9.      Declare that the VMI Alumni Association violated the plaintiffs' rights guaranteed by the First and/or Fourteenth Amendments to the United States Constitution by amending the Articles of Incorporation of the VMI Alumni Association without due process of law and that such amendment of the articles of incorporation was otherwise *ultra vires* in violation of Virginia Code §§

13.1-886 and 13.1-828;

10.     Declare that the VMI Alumni Association violated the plaintiffs' rights guaranteed by the First and/or Fourteenth Amendments to the United States Constitution by amending the bylaws of VMI Alumni Association to include Article 3.11 – "Suspension or Expulsion" without due process of law and that such amendment of the bylaws was otherwise *ultra vires* in violation of Virginia Code §§ 13.1-819 E and 13.1-828;

11.     Declare that the VMI Alumni Association violated the plaintiffs' rights guaranteed by the First and/or Fourteenth Amendments to the United States Constitution by enacting the "VMIAA Procedure for Disciplinary Appeal Hearing" without due process of law and that such amendment of the bylaws was otherwise *ultra vires* in violation of Virginia Code §§ 13.1-819 E and 13.1-828;

12.     Declare that the VMI Alumni Association violated the plaintiffs' rights guaranteed by the First and/or Fourteenth Amendments to the United States Constitution by enacting the "Statement of the Rights, Privileges and Disciplinary Policies and Loss of Privileges of the Members of the VMI Alumni Association" without due process of law and that such amendment of the bylaws was otherwise *ultra vires* in violation of Virginia Code §§ 13.1-819 E and 13.1-828;

13.     Declare that VMI and the VMIAA combined, associated, agreed, mutually undertook and/or concerted together to willfully and maliciously injure the Suspended Members, namely, Michael Adriani, Timothy Cordle, Robert C. Morris, Jr., Peter K. McCrary, Peter M. McCrary, Tracy Porter, Michael Staso, and Ronald M. Stelmasczyk, in their reputations, trades, businesses and/or professions in violation of Virginia Code § 18.2-499 and, pursuant to Virginia Code § 18.2-500 B, enjoin the VMI Alumni Association from violating Virginia Code § 18.2-499 in the future;

14.    Declare that the Articles of Incorporation of the VMI Alumni Association are null and void dating back to the last version for which the VMI Alumni Association can prove to this Court that it complied with the law by providing notice and by receiving approval by the members of the VMI Alumni Association pursuant to Virginia Code § 13.1-886;

15.    Declare that all VMI Alumni Association actions since the illegal amendment of the Articles of Incorporation null and void and order that such actions be set aside, including, but not limited to, all elections of directors, motions, changes in the Articles of Incorporation or Bylaws, resolutions, member suspensions, and financial and other agreements;

16.    Enjoin and set aside the unlawful suspensions and/or expulsions of the "Suspended Members", namely, Michael Adriani, Timothy Cordle, Robert C. Morris, Jr., Peter K. McCrary, Peter M. McCrary, Tracy Porter, Michael Staso, and Ronald M. Stelmasczyk;

17.    Enjoin the VMI Alumni Association from holding elections for directors that violate the express provisions of the Articles of Incorporation and the Virginia Nonstock Corporation Act;

18.    Order the removal of the VMI Alumni Association Board of Directors voted out by the members of the VMI Alumni Association on April 9, 2022 and any subsequent board members unlawfully elected in 2023 and 2024.

19.    Order replacement of VMI Alumni Association Board of Directors through an election conducted in compliance with lawfully enacted Articles of Incorporation and the Virginia Nonstock Corporation Act under the direct supervision of this Court.

20.    Enjoin the VMI Alumni Association from taking any corporate actions until a legally elected Board of Directors is in place.

21.    Grant such other and further relief that the Court may deem just and proper.

**WILLIAM L. RESPESS, DEAN BARR, HUGH P. BRIEN, JOHN CAVEDO, TIMOTHY CORDLE, HARVEY CURLEE, DAVID GIBBINGS, RAINE GILBERT, STU HALAZ, DAVID HARBACH, KENNETH HERLINGER, TIM HOOPER JEFFERSON KASTER, RICK LUTHER, KEVIN MCCLUNG, JAMES MCCRARY, PETER K. MCCRARY,** by the Executor of his estate, **JOHN MCCRARY, PETER M. MCCRARY, DAVID MADDOX, ROBERT C. MORRIS, JR., TRACY PORTER, JOHN ROWE, CHRIS STATIS, MICHAEL STASO, RONALD M. STELMASCZYK, JOHN C. THARRINGTON, SALVATORE J. VITALE, JR.** and **GRAHAM UNDERCOFFER,**

BY:  ___/s/ Paul McCourt Curley_____
            Counsel

Paul McCourt Curley, Esq. VSB No. 43794
SIX EAST LAW GROUP –
CURLEY LAW FIRM, PLLC
6 East Broad Street
Richmond, Virginia 23219
Telephone: (804) 355-8273
E-Mail: paul.curley@sixeastlaw.com
www.sixeastlaw.com
 *Counsel for the Plaintiffs*

50