# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| **WILLIAM L. RESPESS,** *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | **Civil Action No.: 6:24-cv-0028-NKM** |
| § | |
| **VMI ALUMNI ASSOCIATION,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

COME NOW the plaintiffs, by counsel, and hereby respond to the Motion to Dismiss filed herein by the defendant, VMI Alumni Association ("VMIAA"), as follows:

## SUMMARY OF RESPONSE

The defendant is correct that a Virginia nonstock corporation, including the VMIAA, is not required to have members and could have no members or members with no voting rights. While ignored by the defendant in its memorandum, only the incorporators of a Virginia nonstock corporation may elect to have members and only the incorporators of a Virginia nonstock corporation may elect to confer, limit or deny members the right to vote. Thereafter, under the current statutory provisions in Virginia Code § 13.1-884, which was in effect in 2019, the board of directors of a nonstock does not have the authority to amend its articles of incorporation to delete (partially or completely) the members' right to vote, regardless of whether such amendment is approved by the members or not, pursuant to Virginia Code § 13.1-886. According to the VMIAA in its memorandum, the VMIAA believes that its board of directors can amend the Articles of Incorporation to do anything it chooses, including to remove members, to remove members' right to

vote, to sell or dispose of all of the assets of the VMIAA, or to dissolve the VMIAA without any notice to members and/or without their approval.  To make matters worse, according to the VMIAA in its memorandum, if the members who have not been provided any notice of the amendment to remove them as members or to remove their right to vote do not object to the Virginia State Corporation Commission (SCC) regarding the amendment of which they have no knowledge within thirty (30) days, the members have no recourse at all.

In this case, the incorporators of the VMIAA elected to have members and elected that the members of the VMIAA have voting rights or, as the term was exclusively used in the 1903 Act of the General Assembly entitled "An Act Concerning Corporations", "voting power".  This case involves the actions of the VMIAA to intentionally delete the right or power to vote of the members of the VMIAA, whether through its amendment of the Articles of Incorporation on June 18, 2019 or through its enactment of bylaws that are inconsistent with the articles that directly or practically delete the members' right or power to vote, which actions were *ultra vires*, and the other actions of the VMIAA acting jointly and in concert with a state agency, to silence members of the VMIAA who dare challenge the operations of the VMIAA and/or of VMI, working in concert.  The plaintiffs' claims under Virginia Code § 13.1-828 are limited to those actions taken after June 6, 2019, including but not limited to the June 18, 2019 amendment of the Articles of Incorporation and the subject bylaws enacted by the VMIAA thereafter.  The plaintiffs' claims under 42 U.S.C. § 1983 are limited to claims that accrued after June 6, 2022, as are the civil conspiracy claims under Virginia Code §§ 18.2-499 and 18.2-500.

At the motion to dismiss stage, "the Court must read the complaint as a whole, construe the complaint in the light most favorable to the plaintiff[s], and accept the facts alleged in the complaint

2

as true." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).   In this case, the defendant, VMIAA, has made it virtually impossible to properly respond to their motion to dismiss, as the defendant has: 1) ignored the facts alleged by the plaintiffs and the legal theories suggested by those facts; 2) disputed the facts alleged by the plaintiffs that they did not ignore; 3) alleged their own facts, either expressly or implicitly, attaching several exhibits that are not integral to plaintiffs' claims; 4) cherry-picked case law supporting the defendant's alternative facts or stated legal theories as precedent with no supporting case or statutory law; and 5) ignored any case law containing any legal theories supported by the facts alleged in the plaintiffs' complaint.  By so doing, the defendant has not only made it impossible to properly respond to its motion to dismiss, but the defendant has also made it impossible for this Court to properly review its motion to dismiss.  As such, this Court must deny the defendant's motion to dismiss.

<u>**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE**</u>

**I.  Standard of Review**

The purpose of a motion to dismiss is "to test the legal sufficiency of the complaint." <u>Randall v. United States</u>, 30 F.3d 518, 523 (4th Cir. 1994).  To survive a Rule 12(b)(6) motion, a complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007).  The facts alleged must "raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombley</u>, 550 U.S. 544, 555, 570 (2007).  This plausibility standard does not equate to a probability requirement, but it requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Where, as here, the motion to dismiss involves "a civil rights complaint, [the Court] must be

especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff[s] would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." <u>Edwards</u>, 178 F.3d at 244 (internal quotation marks and citation omitted).

## II.   The VMIAA does not have the authority to delete the members' right to vote (partially or completely)

As mentioned *supra*, the incorporators of the VMIAA elected in 1919 to have members and elected that the members of the VMIAA have voting rights or, as the term was exclusively used in the 1903 Act of the General Assembly entitled "An Act Concerning Corporations", "<u>voting power</u>". In 1957 the VMIAA amended its "Certificate of Incorporation" and reiterated the voting power of the members of the VMIAA, to-wit: "Each member shall be entitled to one vote at all meetings of the Association".   Beginning in the 1980s when VMI came under scrutiny for its discriminatory admissions policy and after many years of accumulating the largest per student financial endowment in the country from contributions of VMI alumni, the separation between VMI and the VMIAA began to disappear and VMI began to exercise more and more influence over the operation of the VMIAA.   Over the next decades the VMIAA amended its Articles of Incorporation multiple times – each time infringing more and more upon the members' voting right.   In 1980, the VMIAA amended its Articles of Incorporation relative to members' voting rights to read that " [e]ach member present at any meeting of the Association is entitled to one vote **except on amendments to these Articles of Incorporation**".   In 1987 the VMIAA amended its Articles of Incorporation relative to members' voting rights without providing notice to members and without member approval to read that "[e]ach member present at any meeting of the Corporation is entitled to one vote and shall have the right to

vote to elect and remove Directors who are elected by the members, **but he shall not have the right to vote on any other matter**." Finally, in 2019 the VMIAA amended its Articles of Incorporation relative to members' voting rights without providing notice to members and without member approval to read that "[e]ach Active Member and Honorary Member present at any meeting of the Corporation is entitled to one vote and shall have the right to vote to elect and remove Directors who are elected by the Members, but he or she shall not have the right to vote on any other matter **nor to vote by proxy**". Before 1985, the statute regarding the authority of nonstock corporations to amend its articles of incorporation, Virginia Code § 13.1-235, read as follows:

> **Right to Amend Articles of Incorporation.—**A corporation may amend its articles of incorporation, from time to time, in any and as many respects as may be desired, so long as its articles of incorporation as amended contain only such provisions as are lawful under this Act.

For amendments to articles of incorporation prior to 1985, the plaintiffs agree with the VMIAA that a nonstock corporation generally had the right to amend its articles of incorporation in "any and as many respects as may be desired, so long as its articles of incorporation as amended contain only such provisions as are lawful under this Act." This would include the amendments involved in Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity, 587 S.E. 2d 701 (Va. 2003) upon which the VMIAA heavily relies in claiming that its 2019 amendment of the Articles of Incorporation "cannot be an *ultra vires* act" but fails to inform this Court that the Virginia Supreme Court in Kappa Sigma applied Virginia Code § 13.1-235 and not the current version of the statute that applies to the VMIAA's 2019 amendment of its Articles of Incorporation. And, even more conveniently, the VMIAA, while quoting Virginia Code § 13.1-884(A), leaves out the most important part of the subsection to make it seem that its amendment complied with the statute that was in effect on the

5

date of its challenged amendment.  Virginia Code § 13.1-884(A) reads in full as follows:

**Authority to amend articles of incorporation.**

A.  A corporation may amend its articles at any time to add or change a provision that is required or permitted in the articles or to delete a provision not required in the articles.  Whether a provision is required or permitted in the articles of incorporation is determined as of the effective date of the amendment.

The "required provisions" in articles of incorporation are set forth in Virginia Code § 13.1-819(A), which reads as follows:

A.      The articles of incorporation shall set forth:

1.  A corporate name for the corporation that satisfies the requirements of § 13.1-829.
2.  If the corporation is to have no members, a statement to that effect.
3.  If the corporation is to have one or more classes of members, any provision which the incorporators elect to set forth in the articles of incorporation or, if the articles of incorporation so provide, in the bylaws designating the class or classes of members, stating the qualifications and rights of the members of each class and conferring, limiting or denying the right to vote.
4.  If the directors or any of them are not to be elected or appointed by one or more classes of members, a statement of the manner in which such directors shall be elected or appointed, and a designation of *ex officio* directors, if any.
5.  The address of the corporation's initial registered office (including both (i) the post-office address with street and number, if any, and (ii) the name of the city or county in which it is located), and the name of its initial registered agent at that office, and that the agent is either (i) an individual who is a resident of Virgini and either a director of the corporation or a member of the Virginia State Bar (ii) a domestic or foreign stock or nonstock corporation, limited liability company or registered limited liability partnership authorized to transact business in the Commonwealth.

§ 13.1-819(A)(3) is relevant to this issue and makes clear that only incorporators may elect to have members and only incorporators may elect to confer, limit or deny the right to vote.  Read in combination with § 13.-1-884(A), the articles may be amended to add or change a required provision but may not be amended to delete a required provision.  By infringing upon, conditioning, or limiting

6

the members' right to vote, which could only be done by the incorporators, the VMIAA deleted a required provision and, thus, the amendment was *ultra vires*. The legislature used the words "add" and "change" relative to required provisions and used the word "delete" relative to provisions not required under § 13.1-819, clearly indicating that a nonstock corporation does not have the authority to delete a required provision. The meaning of "add" is obvious and it cannot be argued that the VMIAA added to the members' right to vote by removing their right to vote by proxy. The meaning of "change" is to "exchange one thing for another thing, especially of similar type". Cambridge Dictionary | English Dictionary, Translations & Thesaurus, https://dictionary.cambridge.org/. To condition or limit members' right to vote is not a change, as nothing is exchanged – only removed. To further illustrate the point, the VMIAA believes, relying upon Kappa Sigma, that it has the authority to remove members or to entirely extinguish members' right to vote but, again, Kappa Sigma was decided under a different statute regarding the authority to amend articles of incorporation and, while the Virginia Supreme Court said that the statutes were "similar", the applicable statute in Kappa Sigma did not deny a nonstock corporation the authority to "delete" required provisions, as the statute applicable in this case does. It certainly could not be successfully argued that removing all of its members, as was the case in Kappa Sigma, would be authorized under Virginia Code § 13.1-884(A). If Kappa Sigma was decided today, the result would be different and the act of amending its articles of incorporation to remove all of its members would be determined to be void and not just voidable.

Since the challenged amendment to the Articles of Incorporation occurred on June 18, 2019 and, pursuant to Kappa Sigma a five-year statute of limitations applies, it does not much matter that the amendment without member notice or involvement is void or voidable. To be clear, the Virginia

Supreme Court held that the amendments of the articles of incorporation in <u>Kappa Sigma</u> were done without complying with the statutory requirements set forth in former Virginia Code § 13.1-236(a), making the acts of amending the articles "voidable, rather than void", which subjected the claims to the defense of the statute of limitations.  In this case, the statute of limitations is not an issue. Therefore, if the amendment is not otherwise void, which it is, this Court must now nullify the voidable 2019 amendment.  The only defenses made by the VMIAA in its memorandum are its disingenuous claims that "voting right" and "voting power" are not the same thing and, if not, that the members only have thirty (30) days to contest any problems with the unlawful amendments by the VMIAA of which they had no knowledge.  The plaintiffs will address each argument in turn. The VMIAA's claim that "voting right" and "voting power" are not the same is, well, laughable. Even more laughable is the VMIAA's claim that "[t]here is no dispute that VMIAA members possess "voting power" but that the members do not have "voting rights", while claiming, without support, that "voting rights" and "right to vote" <u>must</u> mean something different than "voting power". Without anything else, it must be obvious, even to the VMIAA's many lawyers, that one cannot have "voting power" without "voting rights" or the "right to vote".  The fact is, "voting power" is "voting rights" and the VMIAA simply cannot admit that it was required to provide notice to its members of the 2019 amendment.  Since the very beginning of statutory corporate law in Virginia, the General Assembly used the term "voting power" in place of "voting rights" as it appears in the current code and the terms are indistinguishable from the former version to the current code.  In the 1903 Act of the General Assembly entitled "An Act Concerning Corporations", Chapter IV, which deals with nonstock corporations, the term "voting power" is used exclusively in the exact same places where "voting rights" appears in the current and corresponding code sections.  In fact, the term "voting

right(s)" or "right to vote" does not appear in the 1903 Act – only "voting power".  For example in Chapter IV of the 1903 Act, the statute regarding provisions of the articles of incorporation in paragraph 7, reads in pertinent part that "[e]ach member of said corporation having <u>voting power</u> under the charter or bylaws shall be <u>entitled to one vote</u> in the meetings of the corporation."  In other words, a member with "voting power" has the "right to vote" or "voting rights".  In the current code, "voting power" is defined in Virginia Code § 13.1-803 as "the current power to vote in the election of directors".  Without the right to vote, the members of the VMIAA could not have the power to vote.  And, because the members of the VMIAA have voting rights, the VMIAA must comply with the requirements of Virginia Code § 13.1-886 relative to the 2019 amendment to the Articles of Incorporation and it did not.

The VMIAA's argument that the members must object to the SCC within thirty (30) days does not fare much better.  It should be obvious that the clerk of the SCC's task of approving amendments to articles of incorporation is purely ministerial and the thirty (30) day limitation on challenges to the issuance of certificates of amendment is only limited to ministerial complaints with the SCC.  From the beginning of corporate law in Virginia, the task of the SCC has been the same.  In <u>Ex Parte Norfolk Ry. & Light Co.</u>, 142 Va. 323, 128 S.E. 602 (1925), the Virginia Supreme Court held that:

> The duties of the State Corporation Commission, under section 154 of the Constitution of 1902 and sections 3746, 3780 and 3777, of the Code of 1919, in the granting of charters and amendments thereof are purely ministerial, and when the preliminary requirements have been complied with, it has no right or power to refuse the application. The Constitution forbids the vesting of "authority in such matters" in "any tribunal or officer," except to the extent and for the purpose of ascertaining whether "the requirements of the law" which would entitle the applicant to a charter, or an amendment, the preliminary requirements, had been complied with.

The current Virginia Code supports the limited ministerial nature of the SCC.  Virginia Code § 13.1-820 reads in pertinent part that:

> If the Commission finds that the articles of incorporation comply with the requirements of law and that all required fees have been paid, it shall issue a certificate of incorporation.

Virginia Code § 13.1-813 provides that no court, except the Supreme Court on appeal shall have jurisdiction to "review, reverse, correct, or annul any action of the Commission".  This case has nothing at all to do with the actions of the Commission.  Clearly the plaintiffs have the right to petition this Court regarding its claims and such thirty (30) review period of the SCC has nothing at all to do with this case.

**III.     The VMIAA ignores the facts supporting the close-nexus, symbiotic relationship, pervasive entwinement that led to the deprivation of plaintiffs' rights and the plaintiffs' claims 42 U.S.C. § 1983 are limited to causes of action that accrued after June 6, 2022**

The plaintiffs' claims under 42 U.S.C. § 1983 are limited to causes of action that accrued after June 6, 2022.  Pursuant to Virginia Code § 8.01-230, a "right of action shall be deemed to accrue and prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person".  In this case, the plaintiffs' claims under 42 U.S.C. § 1983 related to the April 6, 2022 annual meeting did not accrue until the June 11, 2022 special meeting, as the VMIAA, through its president, Sam Stocks, and its legal counsel, Skip Roberts, agreed to call a special meeting to enable the members present at the April 9, 2022 the opportunity to vote at to remove the directors, as they were entitled to do under the Articles of Incorporation.  Therefore, the plaintiffs' 42 U.S.C. § 1983 claims did not accrue until June 11, 2022, when they were ultimately denied their

right to vote.  As set forth in the complaint in paragraph 79 and 80:

Both Skip Roberts and Sam Stocks, on behalf of the VMIAA as its legal counsel and president, respectively, claimed that a special meeting was required to remove the directors. To placate the members, including your plaintiffs, who correctly insisted that the directors had been lawfully removed and did not want to adjourn the meeting, Sam Stocks agreed to call a special meeting so that, "if you think we're a bunch of idiots and you vote us out in a special meeting, so be it, I've got better things to do, fellas."  When the active members present and eligible to vote defeated Sam Stocks' attempts to adjourn the meeting after the false statements were made by him and Skip Roberts, he unlawfully dismissed the active members' rights and disbanded the meeting to thwart the active members stating – "[s]o we're going to adjourn this meeting, and all may yell that I can't adjourn it because we didn't vote to do it".  Prior to that Sam Stocks and Skip Roberts made numerous statements to deliberately give the members the understanding that a special meeting would be called to provide the members, including your plaintiffs, with an opportunity to remove the directors of the VMIAA.

A special meeting of the VMIAA was scheduled to be held on June 11, 2022 in Lexington, Virginia.  However, notwithstanding the fact that Sam Stocks, on behalf of the VMIAA as its president, had represented at the April 9, 2022 annual meeting that he would call a special meeting to allow the members to remove the directors of the VMIAA, he did not allow any motions of any kind and only permitted the members to vote to elect directors, as handpicked by the "Nominating Committee" of the VMIAA.  In this vein, the paper ballot provided by the VMIAA to its members could not be used to remove directors and could only be used to cast a single vote to elect a slate of seven directors, all of whom had been handpicked by the "Nominating Committee".  Thus, the ballot provided by the VMIAA did not permit the exercise of the right to vote to remove directors at any meeting as provided in the Articles of Incorporation or the right to cast individual votes for or against candidates for directors. These actions by the VMIAA, which at all relevant times was pervasively entwined with VMI and engaged in a symbiotic relationship, deprived the members of the VMIAA, including your plaintiffs, of their freedom of speech guaranteed by the First Amendment to the United States Constitution.  When asked what the parliamentary procedure was for adjudicating issues at the meeting, *e.g.* Robert's Rules of Order, etc., Sam Stocks replied that the rules to be followed are "my rules".  He also responded to a request of one member at the meeting, who is a plaintiff herein, to produce the list of members entitled to vote at the meeting required under Virginia Code § 13.1-845 C, referring the member to an attorney representing the Board of Directors at the meeting for satisfaction of his request.  The attorney responded to the request by stating that he did not have such a list.  Accordingly, no list of members was available at the meeting to permit determination if persons attending the meeting and voting were entitled to vote.

Plaintiffs recognize that seeking relief in a § 1983 action they must plead sufficient facts to establish

that they were (1) deprived of a right secured by the Constitution or laws of the United States, and (2) that such deprivation was committed under color of state law. See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999); West v. Atkins, 487 U.S. 42, 48 (1988). The VMIAA maintains that dismissal of Plaintiffs' federal law claims is appropriate because it is a private corporation and took no actions to the state. However, the VMIAA makes such argument by ignoring the facts pleaded by the plaintiffs and § 1983's ambit is not "a simple line between States and people operating outside formally governmental organizations." Rossignol v. Voorhar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)). Instead, § 1983 also includes within its scope "apparently private actions which have a 'sufficiently close nexus' with the State to be fairly treated as that of the State itself." Id. (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)); see S.P. v. City of Takoma Park, 134 F.3d 260, 269 (4th Cir. 1998) ("A private entity regulated by the state acts under color of state law . . . when there is either a sufficiently close nexus, or joint action between the state and the private party"). There is no specific formula for defining state action under this standard. Rossignol, 316 F.3d at 523 (citing Hicks v. S. Md. Health Sys. Agency, 737 F.2d 399, 402 n.3 (4th Cir. 1984)). Rather, the question of what is fairly attributable to the State "is a matter of normative judgment, and the criteria lack rigid simplicity." Brentwood Acad., 531 U.S. at 295; see Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 184 (4th Cir. 2009) (noting that "the totality of the circumstances in this setting is determinative"). The facts supporting the close-nexus, symbiotic relationship, pervasive entwinement between VMI and the VMIAA, giving rise to plaintiffs' claims include but are not limited to the following:

       39. The pervasive entwinement or symbiotic relationship between VMI and the VMIAA and Foundation began in the late 1980s and it has only increased or strengthened

over the last few decades until now VMI and the VMIAA and Foundation are virtually indistinguishable. The beginning of the pervasive entwinement or symbiotic relationship between VMI and the VMIAA and Foundation is illustrated in the case of United States of America v. Commonwealth of Virginia, et al., case number 90-0126-R, filed in this Court in the Roanoke Division, which case culminated in the United States Supreme Court opinion in United States v. Virginia, 518 U.S. 515 (1996) and the admission of women to VMI. In the district court case number 90-0126-R, the Justice Department filed suit on behalf of the United States against VMI for violating the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment for discriminating against women in its admission policy. During the early stages of the case, the VMIAA and Foundation moved to intervene in the case pursuant to Rule 24(a)(2) and (b)(2) of the Federal Rules of Civil Procedure as defendants with VMI. The United States objected to their intervention, arguing that the VMIAA and Foundation had no actual interest in the case and were private entities. The VMIAA and Foundation contended that they were proper parties' defendant with interests entwined with VMI and that their Articles of Incorporation would require them to dissolve if VMI's mission fundamentally changed or VMI ceased to exist. The district court agreed and granted the motion of the VMIAA and Foundation to intervene as defendants in the case. Shortly thereafter, the Attorney General of Virginia moved to withdraw its representation of VMI in the case, which motion was granted by the district court. At the same time, the VMIAA and Foundation requested that their lawyers be permitted to take over the representation of VMI, in place of the Commonwealth of Virginia. For the next six years, the VMIAA and Foundation were defendants in the case and represented the interests of VMI, the Superintendent, and the Board of Visitors of VMI, from the district court to the Fourth Circuit Court of Appeals, back to the district court, on a second appeal to the Fourth Circuit Court of Appeals, and ultimately to the United States Supreme Court.

40.     Between 1937 and 1990, a span of 53 years, the VMIAA and Foundation contributed approximately $25,554,300 to VMI – an average of approximately $482,000 per year. In more recent years, the VMIAA and Foundation contribute more than this amount to VMI, every year. On average, the VMIAA and Foundation contribute approximately $27,000,000.00 per year to VMI, which represents 38%-50% of VMI's operating yearly budget and is more than the amount contributed by the state. The latest yearly budget approved by the VMI Board of Visitors includes a contribution of $33,051,000.00 from the VMIAA and its Foundation. This yearly contribution makes VMI entirely dependent upon the VMIAA to operate and has led to the increasing control of the board of directors of the VMIAA by VMI. What began as an association of VMI graduates to remember life at VMI and to support fellow alumni has become a marketing and moneymaking machine for VMI, with no separation between the VMIAA and VMI. The increasing need to control the VMIAA by VMI has directly led to the deprivation of Constitutional rights of the members of the VMIAA, including your plaintiffs, by the VMIAA and VMI, acting

13

jointly and in concert and while pervasively entwined and engaged in a symbiotic relationship.

41.     Since the 1990s the pervasive entwinement and symbiotic relationship between VMI and the VMIAA has only increased and strengthened.  In 2019 the VMI alumni corporations were restructured and the VMIAA became part of the "VMI Alumni Agencies", which is a consolidating entity comprised of VMI's four alumni organizations: the VMI Alumni Association, VMI Foundation, Inc., VMI Development Board, Inc. and VMI Keydet Club, Inc.  Each of these four nonstock corporations restated their articles in 2019.  The VMI Development Board, Inc. was originally a corporation created to "support the Virginia Military Institute by coordinating development and fund-raising efforts conducted on behalf of the Institute…"  Its original board numbered six *ex officio* directors, two of whom were the Superintendent of VMI and the president of the VMI Board of Visitors.  After restatement, however, it was renamed the "VMI Alumni Agencies Board".  Its purposes were substantially broadened and included "(i) governance, oversight and coordination of the activities and operations of the VMI Alumni Agencies in carrying out their respective missions in support of VMI".  All of these organizations are pervasively entwined with each other and with VMI, except that now, instead of being four separate entities, the three Alumni Agencies fall under the umbrella of the VMI Development Board reconstituted as the VMI Alumni Agencies Board.  The net effect and practical purpose of the restructuring in 2019 was to give VMI and its administration virtually total control over the VMIAA and the entwined alumni agencies and, importantly, more control over the $700,000,000.00 endowment held by the alumni agencies.  Even though VMI had already essentially controlled the VMIAA and Foundation for decades, the restructuring of the alumni agencies introduced a reconstituted and repurposed corporate entity, the VMI Alumni Agencies, and a new position of Chief Executive Officer (CEO) to head the VMI Alumni Agencies, including the VMIAA, and provided direct control over the VMIAA to VMI and its superintendent.  In its essence, the 2019 restructuring was a corporate takeover of the VMIAA and Foundation by VMI, a state agency.  The position of CEO for the VMI Alumni Agencies was advertised by VMI as a position with VMI, and VMI and its administration were directly involved in choosing the individual who became the CEO.  This restructuring of the agencies was done without notice to and without the approval of the members of the VMIAA, as is required by Virginia Code § 13.1-886.  Importantly, Article 4.5 of the VMI Alumni Agencies bylaws expressly provides the VMI Alumni Agencies and its CEO, in combination with VMI and its superintendent, direct control over the governance of the VMIAA and the other constituent and entwined entities of the Alumni Agencies.  Article 4.5 of the VMI Alumni Agencies bylaws reads as follows:

Chief Executive Officer.  The CEO shall be the chief executive officer of the Corporation on a full-time basis and will be responsible for its supervision and operation under the direction and control of the Chairman and the Board of Directors in accordance with the Articles of Incorporation and these Bylaws.  In addition, **the**

**CEO shall** (a) **ensure proper communication with the Office of VMI's Superintendent <u>to achieve, support, and follow VMI's approved strategic plan</u>** and coordinate for support of the Corporation's and the VMI Alumni Agencies' functions, meetings, and other scheduled activities impacting VMI resources as well as the personal involvement of VMI's Superintendent in support of these functions, meetings, and activities and (b) **manage the business affairs, functions, and operations of the VMI Alumni Agencies** under the oversight of the Board of Directors of each of the VMI Alumni Agencies **and serve as the chief liaison between each of the VMI Alumni Agencies and VMI**. The CEO shall also serve as the Secretary of the Corporation. For purposes of these Bylaws, the term "VMI Alumni Agencies" shall have the same meaning as set forth in the Articles of Incorporation. (**emphasis added**).

42.   At all relevant times, the CEO of the VMI Alumni Agencies worked directly with VMI and its administration and provided VMI and its administration with more control over the VMI Alumni Agencies, including the VMIAA. At all relevant times, virtually every action taken by the VMIAA has been directly controlled by the CEO of the VMI Alumni Agencies and VMI and its administration, including those actions complained of herein, while the VMIAA and VMI were pervasively entwined and engaged in a symbiotic relationship.

43.   At all relevant times, the VMIAA occupied Moody Hall, Neikirk Hall and other state buildings located on the VMI post and belonging to VMI.

44.   At all relevant times, the VMIAA networking program for cadets was operated under the guidance of VMI Career Services Office.

45.   At all relevant times, cadets of VMI were used by the VMIAA using the VMIAA calling list to call alumni to solicit funds. This includes funds that are solicited to pay the Superintendent's salary, bonuses, and for his large discretionary fund.

46.   At all relevant times, VMI forced all donations made by alumni to benefit cadets or the Institute to be made through the VMIAA, which must be approved by VMI, through the Superintendent. On March 3, 2023 Superintendent Wins issued a memorandum in which he set forth VMI's policy, in pertinent part as follows:
"VMI only recognizes the established VMI Alumni Agencies and VMI Research Lab as approved external funding sources". "Any donation, monetary or in kind, from any organization other than the VMI Alumni Agencies to a VMI sponsored cadet activity must be approved, in advance, by the Superintendent or his designee." "…it is the policy of the Institute to recognize only those donations made to the VMI Alumni Agencies for purposes of official VMI functions, ceremonies, and publications."

47.   At all relevant times, the VMIAA directly participated in the evaluation and

15

recommendation of candidates for administrative positions at VMI, including the Superintendent and Commandant.

48.     At all relevant times, VMI deliberately conspired with the VMIAA to force VMI's 125+ year-old independent student newspaper, *The Cadet*, one of the oldest independent college newspapers in Virginia, to become part of the VMIAA Communications' office and/or otherwise under the direct control and/or influence of VMI while simultaneously violating the First Amendment rights of the VMIAA members, including some of your plaintiffs, who provided support to VMI cadets and their publication to remain independent and exercise their rights under the First Amendment to the United States Constitution.   VMI attempted to use the memorandum issued on March 3, 2023 by Superintendent Wins to control the funds and sources of funds donated to *The Cadet* even after VMI received a formal warning letter from the Student Press Law Center and the Foundation for Individual Rights and Expression (FIRE) for their actions.   After initially fully endorsing the initiative to restart *The Cadet* after the previous administration closed it in 2019, the VMIAA reversed course and disavowed the newspaper after it refused to become part of the VMIAA under the direct control of VMI.

49.     At all relevant times, VMI and its administration directly participated in the evaluation and recommendation of candidates for the board of directors of the VMIAA and the other alumni agencies, all of which are pervasively entwined and engaged in a symbiotic relationship with VMI.

50.     At all relevant times, the VMI Superintendent was on the board of directors of the VMI Alumni Agencies, Inc., the VMI Keydet Club, Inc., the VMI Foundation, Inc., and is a voting member of the VMIAA, all of which were pervasively entwined and engaged in a symbiotic relationship with VMI.

51.     At all relevant times, Hugh Fain, a member of the VMI Board of Visitors, was on the board of directors of the VMI Alumni Agencies, Inc., which was pervasively entwined and engaged in a symbiotic relationship with the VMIAA and VMI.

52.     At all relevant times, Thomas R. Watjen, a member of the VMI Board of Visitors, was on the board of directors of the VMI Foundation, Inc., which was pervasively entwined and engaged in a symbiotic relationship with the VMIAA and VMI.

53.     At all relevant times, the VMIAA and Foundation have been the obligors on multimillion-dollar municipal bonds in the approximate amounts of $29,000,000.00 each for VMI, standing in place of VMI or the named municipality, putting its assets at risk in lieu of the assets of the state or named municipality, as part of the pervasive entwinement and symbiotic relationship between the VMI Alumni Agencies and VMI.

73.     The annual meeting was attended by approximately one hundred active members of

the VMIAA, including many of your plaintiffs. The annual members-only meeting was also attended by the Superintendent of VMI, who appeared in his Virginia Militia uniform accompanied by his Chief of Staff and other non-members of the VMIAA, including, but not limited to, a contingent of VMI campus police, including those in body armor in and outside of the building. The plaintiffs attended the meeting for the specific purpose of redressing their grievances with VMI and the VMIAA and to remove the directors of the VMIAA who were controlled entirely by VMI.

81.  On or about September 6, 2023 the VMIAA board of directors, acting jointly and in concert with VMI and its administration, sent letters to eight active members of the VMIAA, namely Michael Adriani, Timothy Cordle, Robert C. Morris, Jr., Peter K. McCrary, Peter M. McCrary, Tracy Porter, Michael Staso, and Ronald M. Stelmasczyk, seven of whom are your plaintiffs, notifying these active members that they had been suspended from the VMIAA for a period of ten years for seven of the members and permanently in the case of Robert C. Morris, Jr. (the "Suspended Members").

82.  The action by the VMIAA against plaintiff, Robert C. Morris, Jr., with his lifetime suspension, was clearly orchestrated by VMI. The action was taken on the Saturday of a holiday weekend, approximately two days after VMI had been sanctioned by the Circuit Court of Rockbridge County for making false and misleading representations in a case filed by Morris' company, Center for Applied Innovation, LLC against VMI and its Board of Visitors for violations of Virginia Procurement Rules in competing and awarding a state contract and ordered to pay approximately $15,000 to Morris' company.

83.  All of these Suspended Members of the VMIAA who were ostensibly suspended by the VMIAA, acting jointly and in concert with VMI and its administration, had attended the April 9, 2022 meeting and/or the June 11, 2022 special meeting, and/or were all intent on: 1) redressing their grievances with the VMIAA and VMI; 2) removing the directors of the VMIAA through the lawful exercise of their right to vote to remove directors expressly provided in the Articles of Incorporation; and 3) notifying the other members of the VMIAA regarding the unlawful and *ultra vires* actions of the VMIAA board of directors.

85.  In order to silence these active members of the VMIAA who wished to voice their opinions regarding the direction of VMI and the VMIAA through their votes to lawfully remove the directors of the VMIAA, the VMIAA, acting jointly and in concert with VMI, unlawfully suspended these members in violation of their rights under the First Amendment to the United States Constitution. The VMIAA, acting jointly and in concert with VMI, unlawfully suspended the Suspended Members without due process guaranteed by the Fourteenth Amendment to the United States Constitution.

**IV.** **The Suspension or Expulsion of Members was unlawful and violated the suspended members' Constitutional rights**

Virginia Code § 13.1-819 A.3 provides that:

"[i]f the corporation is to have one or more classes of members, any provision which the incorporators elect to set forth in the articles of incorporation or, if the articles so provide, in the bylaws designating the class or classes of members, stating the qualifications and rights of the members of each class or classes of members of each class and conferring, limiting or denying the right to vote."

Article V of the Articles of Incorporation sets forth the classes of members and defines their voting rights. Article 5.1 reads as follows:

> **Members**. The corporation shall have two class of Members, Active Members (**"Active Members"**) and Honorary Members (**"Honorary Members"**) (collectively, the **"Members"**).
>
> (a) **Active Members.** Each graduate of VMI is entitled to become an Active Member on the date of his or her graduation. Each matriculant of VMI who was in good standing on the date of his or her departure therefrom is entitled to become an Active Member on the date of graduation of his or her Brother Rat Case; provided, however, in on event will an individual become an Active Member while still a member of the Corps of Cadets. The Active Members shall be those members who are registered on the records of the Corporation.
>
> (b) **Honorary Members.** Any person deemed by the Board of Directors, in its discretion, to be worthy of such a distinction, either by virtue of special contributions to VMI or for other reasons, and who shall be elected to such position by the Board of Directors, shall be recognized as an Honorary Alumnus or Alumna of VMI and will be an Honorary Member of the Corporation with voting privileges.

Article 5.2. reads as follows:

> **Voting Rights.** Each Active Member and Honorary Member present at any meeting of the Corporation is entitled to one vote and shall have the right to elect and remove Directors who are elected by the Members, but he or she

18

shall not have the right to vote on any other matter nor to vote by proxy.

Article V of the Articles of Incorporation sets forth the classes of members and defines their voting rights. Nothing in the Articles of Incorporation provides that the bylaws can set forth the qualifications and rights of the members of each class or classes of members of each class or can confer, limit or deny the right to vote. Article 5.3 of the Articles of Incorporation reads:

> **Reference to Bylaws.** All **other** matters concerning the Members shall be set forth in the Bylaws of the Corporation.

To make it perfectly clear that only the Articles can set forth the qualifications and rights of the members of each class and their right to vote, Article 3.1 of the Bylaws reads:

> **Membership.** The members of the Corporation (the "Members") and their voting rights shall be set forth in the Articles of Incorporation.

Notwithstanding the clear language of Virginia Code § 13.1-819 A.3 and the clear language in the Articles of Incorporation, defining the membership of the VMIAA and their voting rights, the VMIAA Board of Directors, without notice of the members of the VMIAA and without member involvement of any kind, amended the Bylaws in 2019 to include the following in Article 3.11:

> **Suspension or Expulsion.** A Member may be suspended or expelled from the Corporation for conduct deemed by the Board of Directors to be detrimental to the interests of the Corporation. Such accused Member shall be furnished with a written statement of the cause of such suspension or expulsion and shall be given a reasonable opportunity to present his or her appeal of such suspension or expulsion to the Board of Directors. At its discretion, the Board of Directors may reduce a period of suspension or reinstate an expelled Member.

The inclusion of this article in the Bylaws violates Virginia Code § 13.1-819 A.3, the clear language in the Articles of Incorporation, and the First and Fourteenth Amendments to the United States Constitution. In addition to violating Virginia Code § 13.1-819 A.3 and the First and Fourteenth

Amendments to the United States Constitution, the inclusion of this language obviously conflicts

with the clear language of the Articles of Incorporation and, thus, the inclusion of this language

violates Virginia Code § 13.1-819 E, which reads in pertinent part as follows:

> …whenever a provision of the articles of incorporation is inconsistent with a bylaw, the provision of the articles of incorporation shall be controlling.

After the VMIAA had unlawfully suspended the Suspended Members in September, 2023, the

VMIAA Board of Directors hastily and, *ex post facto*, enacted the "VMIAA – Procedure for

Disciplinary Appeal Hearing", that lacks every element of the procedural due process guaranteed by

the Fourteenth Amendment to the United States Constitution.

**V.  The plaintiffs request oral argument to address any remaining issues not specifically addressed herein.**


Respectfully submitted,
**WILLIAM L. RESPESS, DEAN BARR,
HUGH P. BRIEN, JOHN CAVEDO,
TIMOTHY CORDLE, HARVEY CURLEE,
D. HAYDEN FISHER, DAVID GIBBINGS,
RAINE GILBERT, DAVID HARBACH,
KENNETH HERLINGER, TIM HOOPER
JEFFERSON KASTER, RICK LUTHER,
KEVIN MCCLUNG, JAMES MCCRARY,
PETER K. MCCRARY,** by the Executor of
his estate, **JOHN MCCRARY, PETER M.
MCCRARY, DAVID M. MADDOX, ROBERT
C. MORRIS, JR., TRACY PORTER, JOHN
ROWE, CHRIS STATIS, MICHAEL STASO,
RONALD M. STELMASCZYK,
JOHN C. THARRINGTON,
SALVATORE J. VITALE, JR.** and
**GRAHAM UNDERCOFFER,**


BY:___/s/ Paul McCourt Curley_____
                    Counsel

20

Paul McCourt Curley, Esq. VSB No. 43794
SIX EAST LAW GROUP –
CURLEY LAW FIRM, PLLC
6 East Broad Street
Richmond, Virginia 23219
Telephone: (804) 355-8273
E-Mail: paul.curley@sixeastlaw.com
www.sixeastlaw.com
  *Counsel for Plaintiffs*

## CERTIFICATE

I hereby certify that on the 27th day of August 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_____/s/ Paul McCourt Curley_____