**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| WILLIAM L. RESPESS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 6:24-cv-00028-NKM-CKM |
| | ) | |
| VMI ALUMNI ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF**
**VMIAA'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant VMI Alumni Association ("VMIAA"), by counsel, respectfully submits this

Reply Memorandum in Support of its Motion to Dismiss the Amended Complaint.

**INTRODUCTION**

Plaintiffs' opposition is principally defined by its omissions.  By failing to address

multiple, independent VMIAA grounds for dismissal, Plaintiffs have conceded most of their

claims.  Despite recognizing that they must sufficiently allege "deprivation of a right secured by

the Constitution or laws of the United States" for their 42 U.S.C. § 1983 claims (Opp. at 11-12),

Plaintiffs do not respond to VMIAA's argument that Counts One and Two fail for this very

reason.  Plaintiffs also say nothing in defense of their Count Three claims under Virginia's

business conspiracy act.  With respect to Count Four—the purported *ultra vires* conduct under

Virginia Code § 13.1-828—Plaintiffs address only a fraction of VMIAA's arguments, focusing

on the 2019 amendments to VMIAA's articles of incorporation.  Ignored are VMIAA's specific

dismissal arguments regarding the April 2022 annual meeting, the June 2022 meeting, VMIAA's

three-year and staggered director terms, member records, and electronic voting.

The arguments Plaintiffs do make hardly fare better.  For example, in defense of their corporate claims (Count Four), Plaintiffs advance an outlandish new theory: that once VMIAA's 1919 incorporators set forth member voting rights over 100 years ago, these rights could not be diminished in any way.  That is unequivocally wrong.  Here (and elsewhere), Plaintiffs also fail to engage in basic statutory interpretation—side-stepping the Nonstock Corporation Act's plain meaning and instead relying on naked rhetoric.

The opposition's last half addresses the purported § 1983 claims (Counts One and Two), but Plaintiffs offer nothing substantive or new.  After quoting boilerplate about the state action standard, Plaintiffs then copy—for pages—the Amended Complaint without analysis.  Similarly, for Count Two (claims by the suspended/expelled Plaintiffs), Plaintiffs repurpose—*verbatim*—paragraphs from the Amended Complaint.  There is simply no engagement with VMIAA's detailed arguments explaining why the § 1983 claims are non-starters.

For these reasons, as further explained below, the Court should grant VMIAA's Motion and dismiss the Amended Complaint with prejudice.

## ARGUMENT

### 1. Plaintiffs have conceded numerous issues.

VMIAA's Motion enumerated its grounds for dismissal in five numbered paragraphs, with ten separate sub-paragraphs.  Motion, Dkt. No. 15.  It was followed by a 48-page brief in support, specifying these arguments.  Opening Br., Dkt. No. 16.

For example, the Motion listed three independent grounds why Count One (Plaintiffs' general § 1983 claims) should be dismissed, with the last being: "Plaintiffs fail to plausibly allege that certain challenged internal governance actions of VMIAA constitute the deprivation of a cognizable constitutional or federally protected right."  Motion, ¶ 1(c).  This same ground

was separately listed as a ground to dismiss Count Two.  Motion, ¶ 2(b).  On brief, VMIAA

detailed this argument, including reasons why Plaintiffs' alleged deprivations could not plausibly

rise to the constitutional level.  Opening Br. at 42-47.  But other than acknowledging Plaintiffs'

burden (*see* Opp. at 10-11), the opposition wholly fails to address this dismissal argument.

With perhaps one limited exception, that omission is fatal to the entirety of Plaintiffs'

Count One and Two claims.[1]  As this Court has held, the failure to respond to arguments on brief

is considered a concession or waiver.[2]  *See, e.g.*, *Muller v. ALG Tr., LLC*, No. 3:24cv14, 2024

U.S. Dist. LEXIS 152214, at *33 (W.D. Va. Aug. 26, 2024) (because a cross-claim plaintiff

failed to "respond to [the defendant's] arguments as they apply to the civil conspiracy claim," the

"Court concludes that this claim is waived"); *Bills v. Va. Dep't of Educ.*, 605 F. Supp. 3d 744,

755 (W.D. Va. 2022) (considering the "[p]laintiffs to have conceded" an issue after they "did not

respond to this argument in their response brief"); *Nzabandora v. Univ. of Va.*, No. 3:17cv3,

2017 U.S. Dist. LEXIS 175912, at *13 (W.D. Va. Oct. 24, 2017) (holding that because the

plaintiff "propounded no argument in response . . . . [s]he therefore concedes the issue").[3]

---

[1] The Court may find that Plaintiffs—albeit only in a technical sense—in part responded to this ground in relation to Count Two.  That issue is addressed *infra* at 21-22.

[2] This result is also consistent with the Court's Pretrial Order.  Dkt. No. 18; *see also* Dkt. No. 21 (ordering that unless changed therein, "[a]ll other provisions of the Pretrial Order (Dkt. 18) shall remain unchanged").  Paragraph 7 of the Pretrial Order states that "[e]xcept for good cause shown, if a brief opposing a motion is not timely filed, the court will consider the motion to be unopposed."  Dkt. No. 18.  It follows that if a specified ground for a motion is not addressed in an opposition, the Court will likewise consider that ground unopposed.

[3] Accordingly, Plaintiffs' catch-all sentence at the end of their brief— "request[ing] oral argument to address any remaining issues not specifically addressed herein" (Opp. at 20)—is wholly insufficient.  *Accord Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (ignoring arguments in a response is "an outright failure to join in the adversarial process [that] would ordinarily result in waiver").

There are many more fatal omissions.  For Count Three, beyond a statement that Plaintiffs' statutory business conspiracy claims are limited to events after June 6, 2022 (Opp. at 2), and quoting Paragraph 48 of the Amended Complaint in connection with Plaintiffs' § 1983 arguments (*id*. at 16), the word "conspiracy" (or its derivations) cannot be found in the opposition.  Plaintiffs simply failed to respond to either of VMIAA's Count Three grounds:

     a.  Plaintiffs/the Suspended Plaintiffs only seek recovery for alleged injury to personal reputational interests, which are not cognizable under Virginia's business conspiracy statute; and

     b.  Plaintiffs/the Suspended Plaintiffs fail to plausibly and/or with particularity allege the elements of a statutory business conspiracy claim, including concerted action.

Motion, ¶ 3(a)-(b); *see also* Opening Br. at 32-34.  Plaintiffs thus concede Count Three's dismissal.

As for Count Four (purported *ultra vires* conduct pursuant to Virginia Code § 13.1-828), the Motion contained three separate grounds, the first being: "[t]he alleged conduct, <u>in each instance</u>, was lawful, authorized, and/or otherwise proper under the Virginia Nonstock Corporation Act, Va. Code § 13.1-801 *et seq.*, and VMIAA's governing corporate documents."  Motion, ¶ 4(a) (emphasis added).  Plaintiffs, however, only respond regarding the 2019 amendment to VMIAA's articles.  *See* Opening Br. at 20-23; Opp. at 1-2, 4-9.  Plaintiffs do <u>not</u> oppose any of the other instances of alleged conduct encompassed within VMIAA's first dismissal ground, namely: (1) the April 2022 annual meeting (Opening Br. at 27-29); (2) the June 2022 meeting (*id*. at 29-30); (3) VMIAA's three-year and staggered director terms (*id*., at 30-31); (4) member records claims (*id*. at 15-16), and (5) electronic voting (*id*. at 31-32).  All of these Count Four claims have been waived/conceded.

The opposition also ignores VMIAA's argument that the Executor to the Estate of Peter K. McCrary must be dismissed as a Plaintiff. Motion, ¶ 5; Opening Br. at 47. The Executor's claims must also be dismissed.[4]

Further, Plaintiffs make a number of express concessions that limit the scope of their claims and/or otherwise support their dismissal. For example, Plaintiffs state that their claims under "Virginia Code § 13.1-828 are limited to those actions taken after June 6, 2019" (Opp. at 2), and their § 1983 causes of action "are limited to claims that accrued after June 6, 2022" (*id*.). These concessions will be further discussed below.[5]

## 2. There is no merit to Plaintiffs' new contention that member voting rights set by incorporators can never be diminished.

The foundation to the Amended Complaint is Plaintiffs' contention that VMIAA's 2019 Articles (attached as **Exhibit 1** to Opening Br., Dkt No. 16-1) are illegal and void, because they were only approved by VMIAA's board of directors, rather than VMIAA's members. *See* Opening Br. at 2, 15, 20.

That foundation has collapsed. In its opening brief, VMIAA explained that members did not have a right to vote on the 2019 Articles, tracing the Nonstock Corporation Act's relevant

---

[4] In general, VMIAA will not further address its unopposed Motion to Dismiss arguments; dismissal is also required for the reasons stated in VMIAA's opening brief.

[5] Plaintiffs throw up their hands and say that it is "impossible" to respond to VMIAA's motion to dismiss arguments. Opp. at 3. That excuse is false. In truth, Plaintiffs alleged a sprawling and unsupported set of claims. VMIAA moved to dismiss all of them, painstakingly detailing its reasons. Plaintiffs were required to meet these arguments in opposition; they were simply unable or unwilling to do so.

Relatedly, the Court properly may take judicial notice on a motion to dismiss, as well as consider documents that are integral to the Amended Complaint and authentic. *See* Opening Br. at 3. Plaintiffs passingly assert that "several exhibits" are not integral to their claims (Opp. at 3), but fail to identify those exhibits or provide an explanation. And Plaintiffs do not respond to the fact that the Court may take judicial notice of numerous documents—Exhibits 1, 2, 4, 5, 6, 8, 9— which is an unchallenged (and independent) ground for their consideration here.

provisions and VMIAA's articles.  *Id.* at 20-23.  Facing this roadblock, Plaintiffs largely abandon their alleged theory[6] and concoct a radical new one: "only the incorporators of a Virginia nonstock corporation may elect to confer, limit or deny members the right to vote."  Opp. at 1. Plaintiffs cite no case law for this sweeping proposition.  Beyond unsupported, it is directly in conflict with the Nonstock Corporation Act—not to mention wholly illogical and unworkable.

At first, Plaintiffs suggest that this new theory derives from "the 1903 Act of the General Assembly entitled 'An Act Concerning Corporations.'"  *See* Opp. at 2, 4.  But the Plaintiffs do not here explain how this stale and superseded act would have anything to say about VMIAA's amendment more than a century later.[7]  It does not—the Nonstock Corporation Act governs.  Va. Code § 13.1-937 ("The charter of every corporation heretofore or hereafter organized in this Commonwealth shall be subject to the provisions of this chapter.").

Plaintiffs ultimately arrive at this same place, as they try to tie their "incorporators only" theory to the Act.  Specifically, Plaintiffs contend that Code § 13.1-884(A), read together with Code § 13.1-819(A)(3), reveals that incorporators' initial decision regarding members' right to vote can never be limited.  Opp. at 6-7.  They are demonstrably wrong.

Section 13.1-819(A) provides that the "articles of incorporation shall set forth" a list of items, including:

> If the corporation is to have one or more classes of members, <u>any provision</u> which the incorporators elect to set forth in the articles of incorporation or, if the articles of incorporation so provide, in the bylaws designating the class or classes of members, stating the

---

[6] As part of this argument, Plaintiffs assert that even members cannot vote to diminish member voting rights.  *See* Opp. at 1 ("the board of directors of a nonstock [corporation] does not have the authority to amend its articles to delete (partially or completely) the members' right to vote, <u>regardless of whether such amendment is approved by the members or not</u>") (emphasis added).

[7] Nor did Plaintiffs attach this 1903 act or point the Court in its direction.  For the Court's benefit, VMIAA understands the 1903 act is available on Google Books, at https://play.google.com/books/reader?id=XktOAAAAYAAJ&pg=GBS.PR22&hl=en

> qualifications and rights of the members of each class <u>and</u>
> <u>conferring, limiting or denying the right to vote</u>.

Va. Code § 13.1-819(A)(3) (emphasis added).  As for § 13.1-884(A), it provides that "[a]

corporation may amend its articles of incorporation at any time to add or change a provision that

is required or permitted in the articles or to delete a provision not required in the articles."  Va.

Code § 13.1-884(A).

Plaintiffs contend that if incorporators choose to set forth member voting rights in the

articles of incorporation, those particular voting rights become "required" under the Act.  Under

Plaintiffs' tortured construction, those particular voting rights cannot afterwards be restricted in

any way, because that would be the "deletion" of a required provision.  *See* Opp. at 6-7.

In reality, all that § 13.1-819(A) says is that, "if" the nonstock corporation has members,[8]

the subject matter of member voting rights shall be addressed by a "provision" in the articles.

That articles "provision" could defer entirely to the corporation's bylaws, or could itself

delineate members' voting rights—as the 2019 Articles do.  *See* **Ex. 1**, Art. 5.2.  If this articles

provision sets forth the members' right to vote, that subject can be <u>addressed in any way</u>.

Explicitly by statute, the "right to vote" may be (1) "confer[ed]," (2) "limit[ed]," or (3) outright

"den[ied]."  Va. Code § 13.1-819(A)(3).  Thus, such a provision could "deny" voting rights—

*e.g.*, that "members have no voting rights."[9]  Or it could "confer" and "limit" voting rights—*e.g.*,

that "members may vote on the election and removal of directors, but cannot vote on any other

matter."

---

[8] Plaintiffs agree that a nonstock corporation "is not required to have members."  Opp. at 1; *see also* Va. Code § 13.1-837 ("A corporation . . . may have no members.").

[9] Plaintiffs likewise agree that a nonstock corporation "could have . . . members with no voting rights."  Opp. at 1; *see also* Va. Code § 13.1-837 ("<u>Members shall not have voting or other rights except as provided in the articles of incorporation</u> or if the articles of incorporation so provide, in the bylaws.") (emphasis added).

Turning to § 13.1-884(A), it could not be clearer: a corporation "may amend its articles of incorporation at any time to . . . change a provision that is required or permitted in the articles." Va. Code § 13.1-884(A). In other words, even if a provision may be required on a subject matter, its content can "change" over time. [10]

That member voting rights are not fixed in perpetuity is confirmed by other sections of the Act. For corporations that existed before January 1, 1957 (like VMIAA), the Act is explicit that voting rights can change: members "shall continue to have the same voting and other rights as before January 1, 1957, until changed by amendment of the articles of incorporation." Va. Code § 13.1-837 (emphasis added). And whatever member voting rights the articles may confer at any point, the Act is again explicit that members have no vested interest in such rights. Va. Code § 13.1-884(B) ("A member of the corporation does not have a vested property right resulting from any provision in the articles of incorporation."). Plaintiffs' unfounded reading would thus be in direct conflict with not just the plain language of § 13.1-819(A)(3) and § 13.1-884(A), but also § 13.1-837 and § 13.1-884(B).

From a policy perspective, Plaintiffs' gambit would result in an unprecedented new rule that would paralyze not only VMIAA, but all other Virginia nonstock corporations. To be clear, incorporators can only amend articles of incorporation prior to the corporation's organization,

---

[10] VMIAA submits that "change" requires no dictionary consultation—it means to make different in some way, to alter. This is confirmed by the first definition in Merriam-Webster (https://www.merriam-webster.com/dictionary/change). In any event, Plaintiff's cherry-picked definition (see Opp. at 7) leads the same result: to "exchange one thing for another" in this context would mean to substitute one provision addressing the subject matter of member voting rights for another such provision.

For their part, Plaintiffs wrongly focus on the word "delete" in § 13.1-884(A), and then compound their error by conflating "provision" with any particular "right to vote." See Opp. at 6-7. In the 2019 Articles' amendments, VMIAA did not "delete" the provision addressing member voting rights; rather, that provision was "changed."

and then only if there is no board of directors.  Va. Code  § 13.1-887.1 ("When a corporation has

not yet completed its organization, its board of directors <u>or incorporators, in the event that there

is no board of directors</u>, may adopt one or more amendments to the corporation's articles of

incorporation.") (emphasis added).[11]  According to Plaintiffs though, nonstock corporations

could never—under any circumstances or by following any procedure—diminish member voting

rights.  Not only is that reading in direct contravention of the Act's plain language, it would lead

to a prohibited "absurd result."  *City of Charlottesville v. Payne*, 856 S.E.2d 203, 209 (Va. 2021)

("In interpreting a statute, we are bound by the plain language of a statute unless the terms are

ambiguous or applying the plain language would lead to an absurd result.") (quotation omitted).

Finally, Plaintiffs' concession that their Count Four claims "are limited to those actions

taken after June 6, 2019" would moot this issue in any event.  As shown by VMIAA's 1987

Articles (attached as **Exhibit 2** to Opening Br., Dkt. No. 16-2), as of 1987, VMIAA members only

had the right to vote to elect and remove directors, and expressly did "not have the right to vote on

any other matter."  **Ex. 2**, 1987 Articles, Art. IV.[12]  Thus, more than 30 years before Plaintiffs'

---

[11] After a corporation's organization, all corporate powers are vested in the board of directors
(not incorporators).  *See* Va. Code § 13.1-822; Va. Code § 13.1-853(B).  And of course,
VMIAA's 1919 incorporators have long since passed away.

[12] Plaintiffs affirm on brief that this language was in effect as of 1987.  Opp. at 4-5.  The Court
may also take judicial notice of VMIAA's 1987 Articles.  Opening Br. at 4, n.3; Dkt. No. 16-2.
In addition, Plaintiffs expressly referred to this same provision of the 1987 Articles in their
Amended Complaint.  Am. Compl., ¶ 58 ("Article IV of the pre-2019 Articles of
Incorporation").  Thus, the 1987 Articles are integral to Plaintiff's claims, and may be considered
at the motion to dismiss stage for this reason as well.  *See* Opening Br. at 3.

Further, Plaintiffs state that "[i]n 1980, the VMIAA amended its Articles of Incorporation
relative to members' voting rights to read that '[e]ach member present at any meeting of the
Association is entitled to one vote **except on amendments to these Articles of Incorporation**.'"
Opp. at 4 (emphasis in original) (quoting 1980 VMIAA amendments).

Implicit in Plaintiffs' phrasing is that the <u>VMIAA members approved</u> the elimination of
members' right to vote on amendments.  That is confirmed by the amendments themselves; a
certified copy from the Rockbridge County Circuit Court Clerk is attached as **Exhibit 13** ("1980

acknowledged statute of limitations cut-off, members had essentially the same voting rights as they have under the 2019 Articles. *Compare* **Ex. 1**, 2019 Articles, Art. 5.2 *with* **Ex. 2**, 1987 Articles, Art. IV.[13]

### 3. Under the plain meaning of the Act, VMIAA's directors properly approved the 2019 Articles' amendments without member involvement.

Despite Plaintiffs leading with their meritless "incorporators only" theory, they ultimately (and inconsistently) still argue that the amendments in the 2019 Articles had to be approved by VMIAA members pursuant to Code § 13.1-886. *See* Opp. at 9. That is plainly wrong as well.

As stated above, nonstock corporation members start from a baseline of no voting rights; member voting rights exist only to the extent provided for in the articles of incorporation (or the bylaws if the articles provide). *See also* Opening Br. at 4-5, 21-23. For example, "[m]embers shall not be entitled to vote <u>except as the right to vote shall be conferred</u> by the articles of incorporation, or if the articles of incorporation so provide, in the bylaws." Va. Code § 13.1-846(A) (emphasis added).

---

Amendments"). The 1980 Amendments "received more than two-thirds of the votes entitled to be cast by members present or represented by proxy at the meeting." **Ex. 13** at 3, ¶ 8.

The Court may take judicial notice of VMIAA's 1980 Amendments, as they are a matter of public record. *See* Opening Br. at 3 (quoting *Philips v. Pitt Cnty Mem'l. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

[13] In addition to some minor cosmetic changes, the 2019 Articles stated that members could not vote by proxy. But under the Act, the right to vote by proxy can be eliminated by either the articles of incorporation <u>or</u> the bylaws. Va. Code § 13.1-847(A) ("A member entitled to vote may vote in person or, unless the articles of incorporation or bylaws otherwise provide, by proxy."). VMIAA's Bylaws (attached as **Exhibit 3** to Opening Br.) independently removed members' ability to vote by proxy, and were effective June 1, 2019—before the 2019 Articles became effective and before Plaintiffs' self-acknowledged June 6, 2019 statute of limitations cutoff. **Ex. 3**, Dkt. No. 16-3 Bylaws, Art. 3.8 ("A Member entitled to vote may vote only in person and not by proxy."); *id* at Pageid#220 (the Bylaws were "[a]pproved June 1, 2019").

This phrasing in § 13.1-846(A) is illuminating: the right to vote is not an all or nothing proposition, rather, members may only vote "as the right to vote shall be conferred."   That voting rights must be specifically conferred carries through to § 13.1-886—the statute that Plaintiffs incorrectly rely upon.  There, the Act provides that "[t]he members entitled to vote on the amendment shall approve the amendment."  Va. Code § 13.1-886(A)(3) (emphasis added).  Thus, for members to have "voting rights" for purposes of § 13.1-886(A), they must be "entitled to vote on the amendment."

Consistent with the Act, for decades VMIAA's articles of incorporation have not provided members with the right to vote on amending the articles.  *See* **Ex. 1**, 2019 Articles, Art. 5.2; **Ex. 2**, 1987 Articles, Art. IV; Opp. at 4; **Ex. 13**, 1980 Amendments at 2.  And since 1987, members have only had the "right to vote to elect and remove Directors," and members "shall not have the right to vote on any other matter."  **Ex. 1**, 2019 Articles, Art. 5.2; **Ex. 2**, 1987 Articles, Art. IV.  To reiterate the obvious, (a) voting to amend articles of incorporation is distinct from (b) voting to elect/remove directors.  *See* Opening Br. at 22.

When there are "no members having voting rights," the Act expressly states that the directors can amend a nonstock corporation's articles of incorporation at a board meeting "upon receiving the vote of at least two-thirds of the directors in office."  Va. Code § 13.1-885(A); *see also* Va. Code § 13.1-889(B) ("If the restatement includes an amendment that does not require member approval, it shall be adopted as provided in § 13.1-885.").  Accordingly, in 2019 VMIAA properly amended and restated its articles of incorporation, as the amendment in the 2019 Articles "was adopted by a vote of at least two thirds of the Directors in office without member action."  **Ex. 1** at 6; *see also* **Ex. 2**, 1987 Articles, Art. IV; Am. Compl., ¶ 58.

For their part, Plaintiffs unabashedly conflate "voting power" with "voting rights" or a "right to vote" *See* Opp. at 9 ("In other words, a member with 'voting power' has the 'right to vote' or 'voting rights.'").  "Voting power" is a statutorily defined term, and means "the current power to vote in the election of directors."  Va. Code § 13.1-803.  According to Plaintiffs, because they meet the definition of "voting power"—*i.e.*, they have the right to vote in the election of directors—they have complete and unbridled "voting rights" or the "right to vote" wherever those other terms might be used in the Act, and in particular in Code § 13.1-886.  *See* Am. Compl., ¶¶ 54-58.  None of this follows, Plaintiffs' repetitive protestations notwithstanding.

As VMIAA has previously argued, because "voting rights" and the "right to vote," are not statutorily defined, their usage in the Nonstock Corporation Act must mean something other than "voting power."  *See* Opening Br. at 22.  And because there are "no [VMIAA] members having voting rights" with respect to amending VMIAA's articles of incorporation, the board of directors may adopt amendments with a two-thirds vote.  Va. Code § 13.1-885(A); *see also* Opening Br. at 22-23.

Plaintiffs shrug this off, stating that "VMIAA's claim that 'voting power' and 'voting power' are not the same is, well laughable."  Opp. at 8.  Absolutely not.  Instead, this distinction reflects a basic tenet of statutory interpretation: "when the General Assembly has used specific language in one instance but omits that language or uses different language when addressing a similar subject elsewhere in the Code, [a court] <u>must presume that the difference in the choice of language was intentional</u>."  *Morgan v. Commonwealth*, 881 S.E.2d 795, 799 (Va. 2022) (emphasis added) (quotation omitted).  In other words, because the General Assembly "knows how" to use such language in a statute, "omission of such language in another statute represents

an <u>unambiguous manifestation of a contrary intention</u>." *Id.* (emphasis added) (quotation omitted).[14]

Here, in § 13.1-803 the General Assembly specifically defined "voting power" to mean the power to vote in the election of directors; its choice to not deploy that definition in § 13.1-885 (or § 13.1-886) was intentional and "an unambiguous manifestation of a contrary intention." Accordingly, because members did not have the right to vote on amendments in June 2019 (*i.e.*, pursuant to the 1987 Articles that were in effect at that time), the amendments made in the 2019 Articles were properly adopted by VMIAA's board.

### 4. Pursuant to Virginia Code § 13.1-813, the amendments to the 2019 Articles cannot now be challenged or reviewed.

VMIAA carefully explained why, applying the Nonstock Corporation Act's plain language, the 2019 amendments to VMIAA's articles are not now subject to challenge or review. Opening Br. at 23-25; *see also id.* at 4.  In response, Plaintiffs refuse to engage with this statutory analysis, nor address VMIAA's case authorities.  Instead, they rely on unsupported rhetoric, and a 1925 case that is fully consistent with VMIAA's argument.  *See* Opp. at 9-10.

In June 2019, VMIAA filed to restate its articles of incorporation.  *See* **Ex. 1**.  VMIAA's submission expressly stated that its restatement "contains an amendment," that the amendment was adopted by the board of directors "without member action," and that "[i]n accordance with Article IV of the Articles of Incorporation [*i.e.*, the 1987 Articles], member action was not required as members are only entitled to vote on the election and removal of certain classes of directors."  *Id.* at 6.

---

[14] The 1903 act is irrelevant to this statutory interpretation issue.

Per its legal duty, the Commission reviewed VMIAA's submission. *See* Va. Code § 13.1-805(A). On June 18, 2019, the Commission issued a "CERTIFICATE OF RESTATEMENT" regarding the 2019 Articles. **Ex. 1** at 5. An image of this Certificate is reproduced below:

**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

AT RICHMOND, JUNE 18, 2019

The State Corporation Commission has found the accompanying articles submitted on behalf of

**VMI Alumni Association (formerly THE VMI ALUMNI ASSOCIATION )**

to comply with the requirements of law, and confirms payment of all required fees. Therefore, it is ORDERED that this

**CERTIFICATE OF RESTATEMENT**

be issued and admitted to record with the articles of restatement in the Office of the Clerk of the Commission, effective June 18, 2019.

The corporation is granted the authority conferred on it by law in accordance with the articles, subject to the conditions and restrictions imposed by law.

STATE CORPORATION COMMISSION

By *Judith Williams Jagdmann*

Judith Williams Jagdmann
Commissioner

The Certificate states that the Commission "has found" VMIAA's submitted articles (*i.e.*, the 2019 Articles) "to comply with the requirements of law." **Ex. 1** at 5; *see also* Va. Code § 13.1-805(A) ("Whenever this chapter conditions the effectiveness of a document upon the issuance of a certificate by the Commission to evidence the effectiveness of the document, the Commission shall by order issue the certificate if it finds that the document complies with the requirements of law."). "Therefore," the Commission "ORDERED" that the Certificate be issued. **Ex. 1** at 5. Further, "Certificate" is a statutorily defined term under the Act: "when relating to articles filed with the Commission," "Certificate" means "the order of the Commission that makes the article effective, together with the articles." Va. Code § 13.1-803 (emphasis added).

There are three key takeaways: (1) the Commission took action on VMIAA's June 2019 articles submission; (2) the Certificate is an "order;" and (3) in issuing the Certificate, the Commission found VMIAA's 2019 Articles submission "to comply with the requirements of law."

Plaintiffs assert that § 13.1-813 and its 30-day review period have "nothing to do with this case." Opp. at 10. They are mistaken. Plainly, § 13.1-813(A) applies to the Commission's action approving the 2019 amendments to VMIAA's articles, as stated in the Certificate. It provides that "[t]he Commission shall have <u>no power to grant a hearing with respect to any</u> **<u>certificate issued by the Commission</u>** <u>with respect to</u> **<u>any articles filed with the Commission</u>** except on a <u>petition by a member</u> or director, <u>filed with the Commission</u> and the corporation <u>within 30 days after the</u> **<u>effective date of the certificate</u>**[.]" Va. Code § 13.1-813(A) (emphasis added). Accordingly, a VMIAA member could only challenge the amendments by filing a petition with the Commission, and only then within 30 days of June 18, 2019.

Section 13.1-813(B) then provides that that the above procedural path—a petition filed in the Commission within 30 days—is the exclusive way to initiate a challenge to such a Commission certificate (or order):

> <u>No court within or without the Commonwealth</u>, except the Supreme Court by way of appeal as authorized by law, <u>shall have</u> <u>jurisdiction to review, reverse, correct or annul</u> **<u>any action of the</u>** **<u>Commission</u>**, within the scope of its authority, <u>with regard to any</u> **<u>articles, certificate, order</u>**, objection or petition, or to suspend or delay the execution or operation thereof, or to enjoin, restrain or interfere with the Commission in the performance of its official duties.

*Id.*, § 13.1-813(B) (emphasis added). Plainly again, § 13.1-813(B) applies to Commission's action approving VMIAA's 2019 Articles by the Certificate/order. There is simply no other way to read this statute.

Taken together, the Commission's determination that the 2019 amendments to VMIAA's articles "comply with the requirements of law" became final on July 18, 2019, and cannot now be reviewed by this Court nor any other court.  Nevertheless, almost five years later, Plaintiffs ask this Court to invalidate these same amendments, alleging that member approval was required (and now, the meritless contention that member voting can never be limited).  For the reasons explained *supra* at 10-13, VMIAA's board properly approved the 2019 amendments; but in any event, the time to lodge a challenge to them has long since passed.

Plaintiffs also argue that the Commission's action approving amendments is only "ministerial," citing *Ex Parte Norfolk Ry. & Light Co*., 128 S.E. 602 (Va. 1925).[15]  That makes no difference.  In whatever capacity the Commission acted when approving the 2019 amendments, the above statutory analysis compels the same conclusion: the Commission's Certificate/order cannot now be challenged.

Section 13.1-813 tracks the Virginia Constitution.  Va. Const. art. IX, § 4 (other than an appeal to the Supreme Court of Virginia, "[n]o other court of the Commonwealth shall have jurisdiction to review, reverse, correct, or annul <u>any action</u> of the Commission or to enjoin or restrain it in the performance of its official duties") (emphasis added).  The Supreme Court of Virginia has held that, as a matter of constitutional law, this exclusive jurisdiction applies to "<u>all challenges to all actions of the SCC</u>, both judgmental <u>and ministerial</u>."  *Atlas Underwriters, Ltd. v. State Corp. Com*., 375 S.E.2d 733, 735 (Va. 1989) (emphasis added).  For similar reasons, challenges to Commission's "ministerial" actions are subject to § 13.1-813.[16]

---

[15] Plaintiffs appear to quote from a headnote, rather than the actual *Ex Parte Norfolk Ry.* opinion.

[16] *Pendergraph v. Woodlawn Country Club, Inc*., 22 Va. Cir. 203 (Fairfax Co. 1990)—cited in VMIAA's opening brief—is illustrative.  Enforcing the parallel provision of the Virginia Stock Corporation Act, the circuit court sustained the defendant's plea in bar, because the Commission "acted clearly within its authority when it issued the Certificate of Amendment," even though the

**5. Plaintiffs' *Kappa Sigma* discussion misses the mark.**

Plaintiffs make a number of statements regarding the *Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity*, 587 S.E.2d 701 (Va. 2003) case. Most center on the incorrect notion that member voting rights cannot be diminished under the current versions of § 13.1-819(A)(3) and § 13.1-884(A). *See* Opp. at 5, 7-8. For the reasons explained *supra* at 5-10, Plaintiffs are mistaken—member voting rights can freely be changed by amendment.

Moreover, there is no substantive difference between former Virginia Code § 13.1-235 and § 13.1-884(A)—both provide that a nonstock corporation' is "empowered" to amend its articles of incorporation consistent with the then governing law. *See Kappa Sigma*, 587 S.E.2d at 708 (stating that the two code provisions are "similar").[17] Pursuant to § 13.1-884, VMIAA member voting rights is "plainly [a] permitted subject[] for amendment." *See Kappa Sigma*, 587 S.E.2d at 708 (making that same statement with respect to § 13.1-235 and "provisions regarding [the Foundation's] membership").

Plaintiffs go on to misapprehend VMIAA's dismissal argument based on *Kappa Sigma*. *See* Opp. at 7-8. It is not based on the statute of limitations; rather VMIAA contends that because none of the challenged conduct can be *ultra vires* as a matter of law, it is not cognizable under § 13.1-828 (the "ultra vires" statute). *See* Opening Br. at 25-27 (setting forth this argument with respect to the 2019 Articles); *id.* at 28-32 (applying this argument to Plaintiffs'

---

Commission "was acting in a purely ministerial manner." *Id.* at 203-04 (citing *Ex Parte Norfolk Ry.*, 128 S.E. at 603-04); *see also Commonwealth ex rel. Beales v. Joco Foundation*, 558 S.E.2d 280, 286 (Va. 2002).

[17] Contrary to Plaintiffs' assertion, VMIAA did not "conveniently" omit the "or to delete a provision not required in the articles" clause from § 13.1-884(A) (*see* Opp. at 5)—VMIAA was quoting (accurately) *Kappa Sigma's* reference to § 13.1-884(A). *See* Opening Br. at 26; *Kappa Sigma*, 587 S.E. 2d at 708.

claims based on the April 2022 annual meeting, the June 2022 meeting, VMIAA's three-year and staggered director terms, and electronic voting).

**6. For Count One, Plaintiffs' claims are limited to those that accrued after June 6, 2022.**

Plaintiffs agree that a two-year statute of limitations applies to their § 1983 claims.  Opp. at 1, 10; *see also* Motion, ¶ 1(a); Opening Br. at 34-35.  That bars most of Count One.

As explained in VMIAA's opening brief, Plaintiffs base their § 1983 claims on the June 2019 restructuring of VMIAA and the other Alumni Agencies.  Opening Br. at 35.  Plaintiffs offer no defense in opposition, and have thus conceded this issue.  *See also supra* at 2-3.

VMIAA also specifically argued that any § 1983 claims based on the April 9, 2022 annual meeting are time-barred.  Opening Br. at 35.  Plaintiffs respond that their claims "related to the April 9, 2022 meeting did not accrue until the June 11, 2022 special meeting," citing Virginia Code § 8.01-230 and indicating that they did not sustain injury until the latter meeting. *See* Opp. at 10-11.

Plaintiffs assert the wrong standard.  "[E]ven though the limitation period is borrowed from state law, the question of when a cause of action <u>accrues</u> under 42 U.S.C. § 1983 remains one of federal law."  *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (emphasis in original).  This accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."  *Id.*  In other words, "[f]or claims brought under 42 U.S.C. § 1983, accrual occurs when a plaintiff knows or has reason to know of the violation."  *Jackson v. Whited*, No. 1:21cv44, 2023 U.S. Dist. LEXIS 196203, at *3 (W.D. Va. Nov. 1, 2023).

On the face of the Amended Complaint, any § 1983 cause of action related to the April 9, 2022 meeting accrued at that meeting.  Am. Compl., ¶ 76 (alleging that action taken at the April

meeting "deprived the members of the VMIAA, including your plaintiffs, of their freedom of speech guaranteed by the First Amendment"), ¶ 104 (alleging that VMIAA's actions "at the annual meeting on April 9, 2022" were themselves "constitutional infringements").

Accordingly, all alleged § 1983 claims based on conduct occurring before June 6, 2022—including the VMIAA's 2019 Articles, the June 2019 "restructuring," and the April 9, 2022 meeting—are time-barred and must be dismissed.

### 7. Count One fails because Plaintiffs failed to plausibly allege VMIAA acted under color of state law with respect to alleged constitutional deprivations.

Plaintiffs acknowledge that they must plausibly allege "they were (1) deprived by a right secured by the Constitution or laws of the United States and (2) that such deprivation was committed under color of state law." Opp. at 11-12.  As discussed above, Plaintiffs have conceded the first element;[18] their opposition confirms that they have failed to allege the second as well.

VMIAA's dismissal argument was not predicated on any "simple line" between state entities and private actors.  *See* Opp. at 12.  Rather, VMIAA demonstrated that Plaintiffs cannot come close to satisfying the demanding "color of state law" standard for private organizations such as itself.   The Fourth Circuit is clear: "private activity will generally not be deemed 'state action' unless the state has so <u>dominated such activity</u> as to convert it to state action."  *Philips*, 572 F.3d at 181 (emphasis added) (quotation omitted).  Finding that a private entity engaged in state action is "the exception rather than the rule."  *Id.*

---

[18] All of Count One, and at least most of Count Two, fail this independent reason.  Plaintiffs did not oppose VMIAA's argument that they failed to plausibly allege deprivation of a constitutional right—including, specifically, to vote, freedom of speech/expression, freedom of assembly and association, petition the government for redress of grievances, and due process.  Opening Br. at 42-47; Motion, ¶ 1(c); Motion, ¶ 2(b); *see also supra* at 2-3 and *infra* at 21-22.

Plaintiffs only scratch surface, quoting general language from a handful of cases and then repeating the words "close-nexus, symbiotic relationship, [and] pervasive entwinement."  Opp. at 12.  There is no discussion of what those words mean under the relevant legal authorities.

Take for example, "pervasive entwinement," which originated in *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001).  Plaintiffs briefly reference the case twice, but not for its "pervasive entwinement" discussion.  *See* Opp. at 12.  By contrast, VMIAA provided a detail analysis of *Brentwood Academy*, explaining that 84 percent of the private school athletic association's members were public schools.  Opening Br. at 37-38.  This drove the Supreme Court's decision: "The nominally private character of the Association is <u>overborne</u> by the <u>pervasive entwinement of public institutions and public officials in its composition and workings</u>.  *Brentwood Academy*, 531 U.S. at 298 (emphasis added); *see also id*. at 299-300 (repeatedly stating that the public school involvement was "overwhelming").

VMIAA further explained that the Amended Complaint's conclusions and labels were insufficient (Opening Br. at 37, 40, n.33); and that factually, nothing similar to *Brentwood Academy* was present here (*see id*. at 38-39).  Repeating pages of paragraphs from the Amended Complaint—most of which describe events predating Plaintiffs' self-acknowledged June 6, 2022 statute of limitations cut-off—cannot save Plaintiffs' claims.  *See* Opp. at 12-17.  There is simply nothing approaching "pervasive entwinement" as a matter of law.

In particular, Plaintiffs did not (and cannot) challenge that "no VMI employees, officers, or members of VMI's Board of Visitors  serve in such capacities on VMIAA's board (even in an *ex officio* capacity), and VMI has no right to appoint, vote on, or remove any of VMIAA's directors."  Opening Br. at 39.  Likewise, it is unchallenged that the VMIAA CEO reports to the VMIAA board.  *Id*. at 39-40.  VMI's total absence of actual authority or control over VMIAA is

dispositive.  *See, e.g.*, *Davenport v. Casteen*, 878 F. Supp. 871, 878 (W.D. Va. 1995) (the inquiry is not whether a state actor has "sway" over or "the practical ability to influence" a private entity's action; rather, "[t]he state actor must [poss]ess and exercise coercive power").

For the same reasons, Plaintiffs' conclusory invocation of a "close nexus" and "symbiotic relationship" is no rejoinder to VMIAA's detailed legal and factual analysis.  *See* Opening Br. at 36-37, 41-42.  At bottom, an "[a]ffiliation or acquiescence between a private entity and the state" is insufficient; instead, the state must "dominate[] such activity as to convert it into state action." *Newby v. Bon Secours St. Francis Family Med. Residency Program*, No. 3:14cv459, 2014 U.S. Dist. LEXIS 153970 at *18-19 (E.D. Va. Sept. 22, 2014), *adopt'd,* 2014 U.S. Dist. LEXIS 152576 (E.D. Va. Oct. 27, 2014) (citing and quoting *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999)).  Plaintiffs fall far short of their burden.

**8.  In response to Count Two, Plaintiffs simply copied the Amended Complaint.**

Literally, Plaintiffs offer nothing new regarding Count Two.  VMIAA moved to dismiss Count Two—the alleged § 1983 claims on behalf of the Suspended Plaintiffs—and specifically set forth its reasons.  Opening Br. at 44-47; Motion ¶ 4.  Section IV of Plaintiffs' opposition is titled "The Suspension or Expulsion of Members was unlawful and violated the suspended members' Constitutional rights."  Opp. at 18; *see also id*. at 18-20.  These three opposition pages, however, could not respond to anything VMIAA argued, because they were <u>written before VMIAA even filed its motion to dismiss</u>.  Plaintiffs merely copied Paragraphs 86-91 of the Amended Complaint, stripped away the paragraph numbering, and presented this as its "opposition."  *Compare* Am. Compl., ¶¶ 86-91 *with* Opp at 18-20.

VMIAA will not here further engage with Plaintiffs' copied opposition, as VMIAA has already briefed why the Amended Complaint (including the recycled paragraphs) fails to state a

claim as to Count Two.  It should be dismissed for the reasons stated in VMIAA's Motion and opening brief, which are effectively unrebutted.  *See supra* at 2-3.

## CONCLUSION

For the foregoing reasons, VMIAA requests that the Court dismiss the Amended Complaint in its entirety and with prejudice, award it its reasonable attorneys' fees and costs under 42 U.S.C § 1988(b) and Virginia Code §18.2-500(B), and award it such additional relief as the Court deems fair and proper.

Respectfully submitted,

VMI ALUMNI ASSOCIATION.

/s/ Michael J. Finney
W. David Paxton (VSB No. 19798)
Michael J. Finney (VSB No. 78484)
William L. Spotswood (VSB No. 97239)
GENTRY LOCKE
10 Franklin Road, S.E., Suite 900
Roanoke, VA  24011
(540) 983-9374
Fax:  (540) 983-9400
paxton@gentrylocke.com
finney@gentrylocke.com
spotswood@gentrylocke.com

*Counsel for VMI Alumni Association*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2024, I electronically filed the foregoing with the

Clerk of the Court, using the CM/ECF system, which then sent a notification of such filing (NEF)

to all counsel of record.


/s/ Michael J. Finney